Decided at PENDLETON, 13 August, 1898.

BARNHART v. EHRHART.

[54 Pac. 195]

TRESPASS—PLEADING AND PROOF.—In trespass, where land is described as a particular lot, without giving metes and bounds, the evidence must be confined solely to that lot, and will not include trespass on other realty belonging to plaintiff.

SURVEYS—MEANDERED LINES—BOUNDARY.*—Where a government surveyor fails to include large tracts of land lying between the meander line as run

*NOTE.—In 42 L. R. A. 502 is an exhaustive collection of authorities on the effect of bounding a grant by a stream or tide water, showing both the rule and the exceptions thereto.  See also the valuable note on waters as boundary lines, in 27 Am. St. Rep. 56.—REPORTER.

and the stream, the patents for lots along such line, though referring for iden-
tification to the official plat of such survey, which represents the meander
line as the border of the water, are grants only to the meander line actually
run.

DISPUTABLE PRESUMPTION — GOVERNMENT SURVEY.— Under the general pre-
sumption that official duty has been performed it will be supposed that a line
appearing on a government map was by the official who surveyed the ground
actually run as shown, but this may be disputed.

From Umatilla : STEPHEN A. LOWELL, Judge.

Trespass by Geo. A. Barnhart against Geo. Ehrhart,
in which plaintiff recovered a judgment for five dollars.
Defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Car-
ter & Raley*, with an oral argument by *Mr. J. H. Raley*.

For respondent there was a brief and an oral argument
by *Mr. John J. Balleray*.

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is an action to recover damages for an alleged
trespass.    It is alleged in the complaint that about July
1, 1896, plaintiff was the owner and in the possession
of lots 3 and 4 of section 21, and lots 5, 6, 7 and 8 of sec-
tion 22, in township 3, of range 33 E. of the Willamette
meridian, in Umatilla County ; that about July 1, 1896,
defendant wrongfully entered upon said premises, broke
down the enclosures thereof, trampled upon the grass,
dug up the soil, and erected a building thereon, to
plaintiff's damage in the sum of $250.    The answer hav-
ing put in issue the allegations of the complaint, a trial
was had, resulting in a verdict and judgment for plaintiff
in the sum of $5, from which defendant appeals.

The evidence tends to show that plaintiff is the owner

in fee simple of said lots, as evidenced by patents from
the United States to William H. Barnhart and Robert A.
Batty, from whom he derives title, either directly or by
mesne conveyances.    It also appears that Wild Horse
Creek flows in a southwesterly direction through said
sections and township, and forms the northern boundary
of a part of the Umatilla Indian reservation.    The town-
ship was originally surveyed in November, 1864, and the
field notes thereof show that the dry bed of a creek
crosses the east boundary of section 22 at a point 25
chains and 80 links north of the southeast corner of said
section ; that it crosses the line between sections 21 and
22 at a point 20 chains and 40 links north of the south
boundary of said sections ; and also crosses the south
boundary of section 21 at a point 36 chains and 50 links
west of the southeast corner of said section.    A plat of
this survey, prepared from the field notes, was approved
by the surveyor-general January 24, 1865, but this plat
was amended from the field notes of a survey made in
June, 1871, of the exterior boundaries of the Umatilla
Indian reservation, and a line, representing this survey,
is traced on the original plat of said township, which
crosses said sections at the points indicated in the origi-
nal field notes as "the dry bed of a creek," on the north
side of which the territory is represented as being divided
into lots which are numbered as described in the com-
plaint, and contain the quantity of land stated in the
grants from the United States.    This plat, as amended,
was reapproved June 21, 1872, and a tracing therefrom,
containing said sections, certified to by the surveyor-
general, being in evidence, tends to show that it is the
"official plat of the survey of said lands, returned to the
general land office by the surveyor-general," as recited
in said patents.

The course of Wild Horse Creek was meandered in

September, 1887, and from the field notes of the survey thereof another plat was made, which was approved June 14, 1890 ; and a tracing therefrom, showing said sections, certified to by the surveyor-general, was introduced in evidence, and tends to show that said meander line crosses the section lines at the points indicated as '' the dry bed of a creek,'' but there is quite a divergence between these plats as to the location of said creek and the exterior boundary of the reservation at all other points.     The line representing the boundary of the reservation on the amended plat commences at the east boundary of section 22, and runs thence in a northwesterly direction to the center of said section, thence in a southwesterly direction until it crosses the line between sections 21 and 22, thence west and thence south to the south boundary of section 21 ; while the meander line of said stream as represented on the last plat begins at the same point as on the preceding plat, but curves in opposite directions ; then, converging, intersects the lines at the points indicated.    J. W. Kimball, the county surveyor of said county, appearing as a witness for the defendant, testifies, in substance, that he resurveyed that part of the exterior boundary line of the Umatilla Indian reservation running through section 22, as shown by the field notes from which the plat approved June 21, 1871, was prepared, and that he also retraced the meander line of Wild Horse Creek through said section 22, as appears by the field notes which formed the basis of the plat approved June 14, 1890, and that these lines were situated in places from a quarter to a third of a mile apart ; and that, if the south boundary of the lots described in the complaint, which contain 134.14 acres, was extended to said creek, the land so included would be 152.76 acres more than is indicated on the official plat, and recited in the patents.    This witness, however, does not say that

he found any evidence of the survey of the exterior boundary of said reservation, the field notes of which formed the basis of the amended plat. Plaintiff testifies that the lots described in the complaint are bounded by Wild Horse Creek, and that he has been in possession of the tract of land lying north of said creek about 30 years.

It will be observed from this testimony and other evidence that plaintiff contended at the trial that the lots described in the complaint extended to Wild Horse Creek, while defendant maintained that lying between these lots and said creek was a tract of government land upon which he sought to perfect a homestead entry. Under the theories advanced by the respective parties, the location of the line as it was run upon the ground in 1871 became important, and was necessarily decisive of the action. If plaintiff had described the several lots by metes and bounds in such a manner as to make Wild Horse Creek the southern boundary thereof, the evidence of the trespass would not be confined to the particular lots mentioned in the complaint, but might apply to any part of the land included within such boundaries. *Poor* v. *Gibson*, 32 N. H. 415. But, inasmuch as the premises are described as lots, the court properly gave the jury the following instruction: "Before you can find for the plaintiff, you must find that the trespass was committed and the injury done to the lots described in plaintiff's complaint, or upon some one of them. If you find the injury was done or the trespass committed upon lots or lands other than those described in the complaint, though the plaintiff may have been in possession of such other lots or lands, yet plaintiff cannot recover under the allegations of the complaint." An action of trespass for injury to real property is properly brought to recover damages arising from a deprivation of the possession thereof, in which case the title thereto is not an import-

ant factor, and becomes of consequence only as it serves to create the presumption that the owner of real property is entitled to the possession. Tested by this rule, the statement in the complaint that plaintiff had been in possession of said lots, of which he had been deprived by defendant, was a material averment, and the evidence necessary to sustain it should show that the trespass complained of was committed upon the premises described in the pleading.

As tending to support defendant's theory of the southern boundary of said lots, his counsel requested the court to give, among others, the following instructions to the jury, which it refused, towit: "I instruct you further that if you find from the evidence offered in this case that there existed at the time of the government survey and plat of the meander line of the reservation a quantity of upland between the meander line and the channel of Wild Horse Creek, covered with a natural growth of vegetation, and such tract of land was equal to or greater in area than the adjacent lots lying north of the meander line and claimed by plaintiff, then you may consider this fact as a circumstance tending to show that the meander line was intended as the south boundary of the lots claimed by plaintiff, regardless of the location of the creek. I instruct you that a meander line is a line run by the surveyor for the purpose of determining the sinuosity of the stream and the area of the lots, and where such line in fact meanders the stream, under the laws of this state the boundary of the lots described would be the center of the channel of the stream, and not the meander line as run on the shore. If, however, you find from the evidence in this case that there is a wide and material divergence between the meander line as run by the surveyor and the north bank of the stream, as it existed at the time of the survey, then I instruct you, as a

matter of law, that the meander line as run by the surveyor upon the ground, and not the stream, should be taken as the southern boundary of the lots described in plaintiff's complaint.''

In making the original survey of public land bordering upon arms of the sea, lakes, and navigable rivers, the surveyor is required to run meander lines for the purpose of fixing the general average of the sinuosities of the shores or banks of such bodies or streams of water as a means of ascertaining the area of each tract the contour of which is rendered irregular by such obstacles, and from the field notes of the survey an official plat is prepared, which, when approved by the surveyor-general, usually represents the meander line as the border of the water, and demonstrates that the water course or body of water, and not the meander line as actually run on the land, constitutes the boundary thereof: *Railroad Co.* v. *Schurmeir*, 74 U. S. (7 Wall. 272); *Hardin* v. *Jordan*, 140 U. S. 406 (11 Sup.. Ct. 808–838). But when, for any reason, the surveyor omits to include large tracts of land lying between the meander line as surveyed or as pretended to have been run upon the ground and such streams or bodies of water, the patents for the lots, though referring to the official plat of such survey for identification, are not equivalent to a conveyance of the premises to such navigable stream, lake, or bay, but are grants limited by such meander line: *Fulton* v. *Frandolig*, 63 Tex. 330; *Granger* v. *Swart*, 1 Woolw. 88, 90 (Fed. .Cas. No. 5,685); *Lammers* v. *Nissen*, 4 Neb. 245; *Bissell* v. *Fletcher*, 19 Neb. 725 (28 N. W. 303); *Glenn* v. *Jeffrey*, 75 Iowa, 20 (39 N. W. 160); *James* v. *Howell*, 41 Ohio St. 696; *Shoemaker* v. *Hatch*, 13 Nev. 261; *Martin* v. *Carlin*, 19 Wis. 454 (88 Am. Dec. 696); *Fuller* v. *Shedd*, 161 Ill. 462 (52 Am. St. Rep. 380, 33 L. R. A. 146, 44 N. E. 286); *Ayers* v. *Watson*, 137 U. S. 584 (11 Sup. Ct. 201).

Tested by this exception to the general rule applicable to the survey of public land, we think defendant was entitled to an instruction illustrative of his theory of the case, and, this being so, inasmuch as the court did not embrace the subject in its general charge, it erred in refusing to give the first instruction requested.

Plaintiff contended that, inasmuch as the channel of Wild Horse Creek formed the boundary of the Indian reservation, the survey of the latter in 1871 must be regarded as the meander of said creek, and, this being so, that stream forms the south boundary of his land; while defendant maintains that the boundary line of the reservation was located on the ground at such an unreasonable distance from the creek as to show that said boundary, and not the creek, formed the south boundary of the lots described in the complaint. The person who, in 1871, surveyed the boundary of the reservation, was a deputy surveyor-general, and, being a public officer, it will, under the presumption that official duty has been regularly performed, be presumed that the line so run by him was the meander of Wild Horse Creek; but such presumption is disputable, and defendant, having introduced testimony tending to show that such boundary line was located from about one-fourth to one-third of a mile from the creek, was entitled to an instruction upon the effect of such survey, if the jury found that it had been so made. The boundary of an Indian reservation is treated as an obstacle to the survey of public lands by legal subdivisions. Rev. St. § 2395. True, the second instruction requested seems to treat such boundary as a non-navigable river, but when it is remembered that the boundary was indicated as "the bed of a dry creek" we think the proposed instruction contains, in the main, such a statement of the law applicable to defendant's theory of the boundary line of said lots as should have

been given to the jury, and, failing in this respect, the court erred. If the evidence had shown that Wild Horse Creek was a stream of any importance, the name and location of which were indicated on the official plat, from which it appeared that the lots in question bordered thereon, decisions may be produced which would authorize the jury to have found the creek boundary to be where the plat of the survey located it. *Bates* v. *Railroad Co.*, 1 Black 204 ; *Schurmeier* v. *St. Paul Railroad Co.*, 10 Minn. 82 ( 88 Am. Dec. 59). The field notes of the survey of 1871 do not purport to be a meander of Wild Horse Creek, nor does the amended plat contain the name of that stream, and, as the original field notes showed "the bed of a dry creek" at the section lines crossed by Wild Horse Creek, it may be that the surveyor erred in locating the boundary of the Indian reservation, in view of which the instruction requested became important ; and hence it follows that the judgment is reversed, and a new trial ordered.

REVERSED.

Decided at PENDLETON, 13 August; rehearing denied 17 October, 1898.