Argued 18 February; decided 22 April, 1901.

## LEWIS *v*. CRAFT.

[64 Pac. 809.]

SALES—MUTUAL AND CONCURRENT CONDITIONS.

1. Under a contract of sale by which goods are to be paid for upon delivery, the seller has complied with his part of the contract when he has the required goods ready at the time and place agreed upon and offers to deliver them upon payment of the price—it is not necessary to tender them unconditionally: *Mitchell* v. *La Follett*, 38 Or. 178, cited.

INSTRUCTIONS MUST PRESENT RESPECTIVE THEORIES.

2. In presenting the law of a case to the jury the court must instruct on the law applicable to all theories that are supported by any competent evidence.

From Linn : GEORGE H. BURNETT, Judge.

This is an action by J. L. Lewis against John and M. B. Craft to recover money paid on account of the purchase price of cattle, and damages for an alleged refusal to deliver them. It is alleged in the complaint, in substance, that on October 26, 1898, the plaintiff and defendants entered into a written contract by the terms of which the latter, in consideration of the receipt of $300, sold to the former two hundred merchantable calves at $11 per head, and agreed to deliver them about five days thereafter at their home, in Linn County, upon the payment of the remainder of the purchase price ; that about November 4, 1898, the defendants not being able to furnish the stipulated number, it was mutually agreed that they would deliver at Lebanon, Oregon, one hundred and eighty-four head in lieu thereof, which were selected for that purpose, and that the remainder of the purchase price should be paid to them upon such delivery ; that on November 4, 1898, and on the next day, at Lebanon, the plaintiff demanded said cattle of the defendants, and offered to pay and tendered to them therefor the sum of $1,724, but they then refused, and have ever since failed and

39 OR.— 20.

neglected to deliver any of them ; and that, in conse-
quence of such refusal and neglect, plaintiff has been
damaged in the sum of $209. The defendants, having
denied the material allegations of the complaint, except
the execution of the written contract, averred that at the
time agreed upon they selected and tendered to the plain-
tiff two hundred calves of the specified character if he
would pay therefor the sum of $1,900, the remainder due
thereon, but he refused to pay any part thereof ; that
they have fully performed their agreement, but he has
refused to keep his part thereof,—and prayed that the
action might be dismissed. The allegations of new mat-
ter in the answer having been denied in the reply, a trial
was had, resulting in a judgment for plaintiff in the sum
of $300, and the defendants appeal.          REVERSED.

*Mr. J. R. Wyatt* for appellants.

*Mr. H. C. Watson* for respondent.

MR. JUSTICE MOORE, after stating the case, delivered
the opinion of the court.

The errors complained of relate to the instructions
given by the court, and its refusal to charge the jury as
requested by defendants' counsel. The jury were in-
structed as follows : "It is admitted by the defendants
in their testimony that the property to the cattle described
in these pleadings has not passed from them, but that
they still retain it ; hence no delivery of the cattle, such
as is contemplated by the contract, has been made. It is
admitted by the plaintiff that he had not paid the money
remaining unpaid on the contract for the sale of said
cattle ; he has never made an actual tender of the same.
For these reasons, and under the pleadings, the plaintiff
is entitled to a verdict of $300, and no more ; and I now in-

struct you to return a verdict for the plaintiff and against
the defendants for $300.   I further instruct you that the
plaintiff in this case is entitled in any event to a verdict
for $300, admitted to have been paid to the defendants as
a part of the purchase price of the cattle in controversy,
and you will return a verdict for them for $300 for the plain-
tiff.''    The instruction requested by defendants which the
court refused to give is as follows :   '' I instruct you that
to constitute a delivery of the cattle named in the con-
tract, by the defendants to plaintiff, under the terms of
said contract, it is not necessary that the title to the same
should pass unconditionally from one to the other, but it
is sufficient if the defendants had the cattle present at the
time and place named in the contract, and tendered the
same to the plaintiff upon condition that he pay the bal-
ance of the purchase money provided in the contract.''
Exceptions to the instructions so given and refused having
been reserved, it is contended by defendants' counsel that
the court erred in these particulars.

To render the rule insisted upon intelligible, it is
deemed essential to state the testimony given by the
respective parties.   As a preliminary matter, it is ad-
mitted that they subscribed their names to a contract of
which the following is a copy, to wit :

'' This article of agreement, made and entered into this
twenty-sixth day of October, 1898, by and between John
and M. B. Craft, party of the first part, and J. L. Lewis,
for Frank Fulton, party of the second part, witnesseth :
that the party of the first part hereby sells and agrees to
deliver to the party of the second part the following de-
scribed cattle, in consideration of price per head men-
tioned in this agreement, to wit :  $—— per head, $——
per head, $—— per head.   Two hundred head of calves,
half steers and half heifers, six months old or older ;
price per head, eleven dollars,—$11.00 per head.   All of
said cattle to be in good, thrifty, sound condition, free

from bulls, stags, big jaws, cripples, hunchbacks, one eyes, Jerseys, or Holsteins ; the said cattle to be delivered by the party of the first part to the party of the second part, at home, on or about the first day of November, 1898.   And said first party hereby acknowledges the receipt of $300.00 (three hundred dollars) as part payment ; the balance to be paid upon delivery of said cattle.

"JOHN & M. B. CRAFT.    [Seal.]
"J. L. LEWIS.    [Seal.]"

The plaintiff testified, in effect, that on November 4, 1898, he went to the residence of one of the defendants to receive the cattle, but, as they had only one hundred and eighty-four head of the required kind and character, it was agreed that this number should be accepted in lieu of that specified, and that the cattle were to be delivered at the stock yards of the Southern Pacific Company at Lebanon, Oregon, where payment therefor at $11 per head, less the sum of $300, should be made ; that in pursuance of the modified agreement the defendants drove the cattle which the parties had selected towards the place agreed upon for their delivery, but while on the way a dispute arose between them respecting the identity of the calves, the witness contending that the defendants were trying to substitute an inferior quality for those which had been selected, whereupon the latter turned the cattle into a corral, where they remained over night, and on the next day the defendants demanded that he either pay the remainder of the purchase price to them, or deposit it with some disinterested person for them, before they would deliver the cattle ; that he refused to comply with their request, telling them that if they would drive the cattle to, and put them in, said stock yards, he would pay them the remainder due thereon, but that he did not tender any money or make any written offer to pay them the sum agreed upon ; that the defendants refused to accede to his proposal, returned with the cattle,

and since then never offered to deliver them ; that if they had complied with the terms of their agreement he would have realized a profit, upon a resale of the cattle, of $184 ; and that he had incurred an expense of $25 in securing cars for their transportation.

The defendants testified that on November 4, 1898, they selected two hundred and fifteen calves of the kind, quality, and character specified, the plaintiff agreeing to accept that number, and turned them into the public road to be delivered, but demanded the sum due thereon before they would permit him to take possession, to which the plaintiff replied that he did not have the money with him, and had forgotten his checkbook, but would send to Lebanon for the money ; that for the purpose of accommodating the plaintiff they drove the cattle towards said town until they met plaintiff's messenger, who returned without the money, whereupon they again demanded the remainder due them, and, upon plaintiff's failure to pay any part thereof, they put the cattle into a corral, where they were kept until the next day, when they again demanded of him the sum so due, or that he deposit it with some disinterested person for them, but upon his refusal to do either they returned with the cattle, and had not since offered to deliver them, because of his refusal to pay for them ; and that no change had ever been made in the terms of the written contract.

1.   It is argued by defendants' counsel that the agreement entered into between the parties affords evidence of their intention that the payment of the remainder of the purchase price of the cattle and their delivery were mutual and concurrent acts, whereby the payment of the money was a condition precedent, when insisted upon, to the transfer of the title, rendering an unconditional tender of the cattle unnecessary, the defendants being required

only to show that they were able, ready, and willing to keep and perform their part of the contract, and that, if the plaintiff failed to pay the money upon such conditions, his default precludes him from securing the title to or the possession of the cattle, and also bars his recovery of the money advanced on account of the purchase thereof. When, by stipulation of the parties or general custom, the delivery of personal property or of a deed to real estate, and the payment of the purchase money, as a consideration therefor, are to occur at the same time, these simultaneous acts are regarded as mutual and concurrent, requiring a party, before he can maintain an action for an alleged breach of the contract, to allege and show a performance or an offer to perform his part of the agreement, and that the other party has failed in this respect : *Frink* v. *Thomas*, 20 Or. 265 (25 Pac. 717, 12 L. R. A. 239); *Sayre* v. *Mohney*, 30 Or. 238 (47 Pac. 197). The defendants' theory of the case is that no change was made in the terms of the original contract respecting the place of delivery, and this presents the question whether it was necessary to make an unconditional tender at their home in order to place the plaintiff in default. In *Mitchell* v. *La Follett*, 38 Or. 178 (63 Pac. 54), it was held that, under an agreement to deliver potatoes which were to be paid for in cash upon delivery, no breach of the contract was occasioned by the defendant's refusal to make such delivery unless upon the condition that the plaintiff would pay the purchase price. In *Howland* v. *Leach*, 11 Pick. 151, the plaintiff, having finished a house for the defendant's testator under an agreement entered into with the latter whereby he was to deliver the key to the building and make a satisfactory deed and title, free of all incumbrance, in consideration of the payment of the sum of $5,500, tendered the key, but did not tender a deed, though he offered to execute and deliver a sufficient deed conveying the fee free from

incumbrance, and a mortgagee of the premises offered to
the testator to discharge his incumbrance thereon, but the
testator refused to accept a valid conveyance and satisfac-
tory title, and, the house having been sold at auction for
less than the price agreed upon, the plaintiff commenced
an action to recover the difference ; and it was held that
the stipulations of the parties were dependent, and that
the plaintiff was not bound to make an unconditional
tender of the deed unless the defendant was willing to
accept it and to pay the purchase money.   Mr. Justice
WILDE, speaking for the court in rendering its decision,
says :  "Both covenants were to be performed at the same
time ;  neither party intended to trust to the personal
security of the other ;  and consequently neither party was
obliged to perform his part of the agreement unless the
other party was ready and willing at the same time to
perform his part also.   It is quite clear, therefore, that
the covenants are mutual and dependent.   In all such
cases neither party can maintain an action without show-
ing a performance, or offer to perform, on his part.   An
offer by the plaintiff to perform his part of the agreement,
and a refusal by the defendant's testator to accept a con-
veyance, is averred in the declaration and fully proved
by the evidence.   This was all the plaintiff was bound to
do.   He was not bound to make an unconditional tender
of a deed, unless the other party was willing to accept it
and to pay the purchase money."

In *Haskins* v. *Warren*, 115 Mass. 514, in speaking of the
reciprocal rights and duties of the vendor and purchaser
of personal property for a consideration payable upon the
delivery thereof, Mr. Justice WELLS says :  "In a sale of
chattels, when the specific articles are set apart or identi-
fied for the purpose, and there is no stipulation for credit,
the sale, as between the parties, takes effect at once, to
pass the title to the purchaser, unless there is some agree-

ment to the contrary ; and the price is also due at the same time. The seller may maintain assumpsit for goods bargained and sold, without any further delivery. Until the delivery is complete and absolute he has a lien for the purchase money, and may retain possession until payment: *Morse* v. *Sherman*, 106 Mass. 430 ; *Arnold* v. *Delano*, 4 Cush. 33 (50 Am. Dec. 754); *Rowley* v. *Bigelow*, 12 Pick. 307 (23 Am. Dec. 607). The promise to deliver, involved in an agreement of sale, and the promise to pay the purchase money, are mutually dependent. Neither party is bound to perform without contemporaneous performance by the other. Payment of the price is the condition upon which alone the purchaser can require the seller to complete the sale by delivery of the property.'' Where the delivery of goods and the payment therefor are to be simultaneous acts, and the goods are delivered in the expectation that the price would be immediately paid, the refusal of the purchaser to make the payment authorizes the vendor to treat the delivery as conditional and reclaim the goods. Thus, in *Leven* v. *Smith*, 1 Denio, 571, the plaintiff having sold to the defendant boots and shoes for cash on delivery, the latter offered to plaintiff's agent, who had delivered the goods, a sum of money and the plaintiff's matured promissory note, payable to the order of others, and assigned in blank to him. The agent, having declined the offer, left the goods in the defendant's store about five minutes, while he went to consult with the plaintiff, who refused to accept the payment offered, whereupon the defendant refused to permit the agent to retake the goods ; and it was held that no title passed by such delivery, and that an action of replevin was maintainable. Mr. Justice JEWETT, in deciding the case, says : "The goods in question were sold by the plaintiffs to the defendant for cash, to be paid on delivery. Payment and delivery were to have been simultaneous. No credit was

given, and there is no evidence that the delivery to the defendant was intended to be absolute, or that the condition of payment was waived ; and the mere handing over the goods under the expectation of immediate payment did not constitute an absolute delivery. The defendant, after such delivery, held the goods in trust for the plaintiffs until payment was made or waived." To the same effect, see *Palmer* v. *Hand*, 13 Johns. 434 (7 Am. Dec. 392); *Marston* v. *Baldwin*, 17 Mass. 605 ; *Paul* v. *Reed*, 52 N. H. 136.

The rules of law do not require the performance of vain things, and since the vendor of goods, upon the failure of the purchaser to pay the purchase money upon the delivery thereof, may treat such delivery as conditional, though apparently absolute, no just reason exists for requiring the vendor to make more than a conditional offer of the goods in exchange for the purchase money when the price or value thereof is payable in cash. The principle thus announced prevents an irresponsible purchaser from securing personal property from an unsuspecting vendor, which he might immediately transfer to an innocent purchaser or apply to the payment of his debts ; and the application of this rule can do a responsible purchaser no injury, for, if he agrees to pay cash upon the delivery of the property, he can not complain because the terms of his contract are specifically enforced.

2. In the case at bar, the defendants having given testimony in support of their theory as to the place of delivery, they were entitled to an instruction thereon : *Fiore* v. *Ladd*, 25 Or. 423 (36 Pac. 572) ; *Barnhart* v. *Ehrhart*, 33 Or. 274 (54 Pac. 195). If the delivery was to be made "at home," they were required only to notify the plaintiff that they were able, ready, and willing to deliver the cattle which had been selected in lieu of the

number agreed upon, and having so notified the plaintiff, and demanded of him the payment of the remainder of the purchase money, they complied with the demands of the law, and if the plaintiff refused or neglected to make the payment, after having received such notice, the failure to secure the cattle is attributable to his breach of the terms of the agreement, in which case, if the jury so found, he could not recover the money advanced on account of the purchase : *Ketchum* v. *Evertson*, 13 Johns. 359 (7 Am. Dec. 384) ; *Monroe* v. *Reynolds*, 47 Barb. 574. If, on the contrary, the plaintiff's theory of the case be true, and the jury should find that the original contract of the parties was subsequently changed, so that the defendants were required to deliver the cattle to the plaintiff at Lebanon, and they failed in this respect, the remainder of the purchase money did not become due until a conditional tender of the cattle was made at that place, in which case the plaintiff is entitled to recover the money which he advanced on account of the purchase, and the damages which he sustained in consequence of the defendants' failure or refusal to keep and perform their part of the modified agreement. From these considerations, it follows that the court erred in refusing to give the instruction requested and in giving those objected to, and hence the judgment is reversed and a new trial ordered.        REVERSED.