(July 6, 1904.)

## JOHNSON v. HURST.

[77 Pac. 784.]

GOVERNMENT SURVEYS—MEANDER LINES—BOUNDARY LINES—ACTION TO QUIET TITLE—COLOR OF TITLE.

1. Where it appears from the notes and official plat founded thereon that all the lands within the legal subdivisions, as authorized to be laid out by section 2395, United States Statutes, have been returned to the government as surveyed and the remainder of the subdivision is shown to be the waters of a navigable stream, and the government issues its patent to a settler or purchaser for fractional subdivisions thereof abutting on a line which purports to meander such stream, the meander line will not be the true boundary line, but the patentee will take title to the stream.

2. Where the government has parted with a larger acreage than it has received pay for, by a patent to fractional lots abutting on a meandered stream, and the patentee takes possession, under his patent, of the lands between the meander line and the stream, he is entitled to be protected in his title and possession as against any and all third persons who do not claim title from the government.

3. *Id.*—In such case no one but the government or its grantee can be heard to question the title or right of possession.

4. Under section 4538, Revised Statutes, an action may be maintained to quiet the title to any interest or estate a person may have in lands of which the law takes cognizance.

5. Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt arises from the circumstances under which the land is held, the identity of the land conveyed, or the construction of the instrument under which the party in possession claims his title.

(Syllabus by the court.)

APPEAL from District Court of the Fourth Judicial District in and for the County of Lincoln. Honorable Lyttleton Price, Judge.

### STATEMENT OF THE FACTS.

After the trial of this case the district judge filed an opinion in writing, from which we take the following statement as to

·the issues made in the court below: "This action was commenced February 8th, this year, to quiet title to certain lands mentioned and referred to as lots 7 and 8 of section 6, and lots 5. 6 and 7 of section 5, township 9 south, of range 15 east, county of Lincoln, containing 111.38 acres. Plaintiff alleges ownership of the premises and sets forth his deraignment of title from the United States. He also alleges his open and notorious possession and cultivation and farming of the premises since January, 1887—the date of his succession to the title by conveyance from the patentee from the government. He alleges that about November 1, 1903, the defendant stealthily took possession of the premises during the temporary absence of the plaintiff therefrom. He further alleges that about October 14, 1903, the defendant first made a claim of title to the premises, and that he ever since and now maintains and claims title thereto and to the exclusion of the plaintiff's title, and asserts that defendant's said claim is without right, and that he has no estate in or right to the premises. Plaintiff alleges further that ever since defendant so obtained possession of the premises he has maintained such possession by threats of personal violence, refuses to quit such possession, and threatens to continue such possession. Plaintiff further alleges that at the time defendant took possession the plaintiff had on the premises valuable growing crops and several hundred tons of hay which defendant refuses to permit plaintiff to use for feeding his sheep."

Then follow allegations intended to show the necessity for the immediate restoration of the premises to the plaintiff for preparation of the same for farming and irrigating them the present year; also an allegation of the defendant's insolvency and inability to respond in damages and of consequent irreparable injury from the facts alleged.

Plaintiff prays that defendant may be required to set forth the nature of his claim, and that it may be determined, and that it be decreed, that defendant has no estate nor interest in the land and that the plaintiff's title is good; and that defendant be enjoined and debarred from asserting any adverse claim of title thereto. He also asks that a writ of injunction or restitu-

-tion be issued ejecting the defendant and restoring the posses-sion to the plaintiff.

To this complaint the defendant answered denying the plain-tiff's ownership of the several lots mentioned for want of suffi-cient information. Defendant further denies that he first made claim to the premises on October 14, 1903, or that he made claim to them at any other time, or that on November 1st, or at any other time, he stealthily or at all took possession of the same, or that he ever refused to quit or deliver up the same to plaintiff.

Defendant pleads also by cross-complaint, in which he sets up that on October 15, 1903, he being a citizen of the United States, entered upon certain unoccupied, unsurveyed lands of the United States, in said county, describing them by metes and bounds, containing not more than 160 acres, and re-corded a notice of possessory claim and posted it on the land and entered into possession and still holds the same, and that within ninety days afterward he built a house and other improvements thereon of the value of $200, and that he marked and staked the corners, and that he therefore is entitled to the possession of such land, subject only to the paramount title of the United States. He alleges that those lands so taken by him *lie immediately south of the lands described in the com-plaint,* and *between said lands claimed by the plaintiff and the north bank of Snake river,* and in his said cross-complaint he states that plaintiff claims and maintains title thereto adverse and to the exclusion of the defendant.

He prays that plaintiff be declared to have no estate or in-terest in the land claimed by the defendant, and that defendant be adjudged to be the owner of the land so taken by him.

It will be observed that the lands claimed by plaintiff are fractional subdivisions designated by lot numbers; also that defendant does not claim any part of them, but asserts that the land which he claims is other and different land lying between said lots and Snake river.

During the trial, and before defendant had offered any evi-dence, the plaintiff asked and obtained leave to amend his com-

plaint, which he did by interlineation, adding to the description of the land by lot numbers, as stated, the words: "according to the official plat of the survey of said land returned to the General Land Office by the Surveyor General," and then further describing the said lots by the boundary line which would make the north bank of Snake river the southern boundary line of said lots.

To this amended complaint the defendant forthwith answered denying plaintiff's ownership of said lots (by number) for want of sufficient information, and further specially denying that they are bounded as set forth in the said amendment, and alleging that if they were so bounded, the land contained therein would amount to over four hundred acres. In other particulars defendant's answer to the amended complaint is substantially the same as to the original.

At the same time the defendant abandoned his cross-complaint and announced that he stood on the answer to the amended complaint alone.

From the same opinion we quote the following as the statement of evidence introduced upon the trial: "The evidence shows that Granville Brown entered the lots mentioned, and afterward, in October, 1889, secured a patent from the United States for them, in which they are described substantially as in the original complaint in this action, by number, section and township and 'according to the official plat,' " etc. The patent and a certified copy of the official plat are in evidence. On the plat these lots are shown as and appear to be bounded on the south side by what purports to be Snake river. Each of the lots, as platted thereon, is marked with the area in acres contained therein, and together they aggregate the area stated in the complaint—111.38 acres. From the plat it appears that there is no land between these lots and the river bank. This constitutes the plaintiff's case as far as this branch of it is concerned.

The defendant put in evidence a certified copy of the field-notes of the survey and in connection therewith, testimony as to the situation of natural landmarks and roads relative to the

river bank and a bluff or declivity of lava rocks on the premises, from which it must be concluded that notwithstanding appearances from an inspection of the plat, there is in fact a larger area of land between the river bank as it really exists, and the meander line river margin as it is shown on the plat, than the total area of the lots conveyed by the patent. This evidence is not specific as to courses and distances and area of land; and it is not from qualified surveyors. But the description of the premises by the witnesses with relation to established and recognized lines of public survey, roads and the bluff mentioned in the field-notes in section 5, and the actual width of the river between its banks, makes it sufficiently clear that there is at least 160 acres of land between the south boundary line of the plaintiff's lots, as surveyed and shown on the plat, and the real river bank. Besides, the plaintiff practically concedes such to be the fact, and rests his claim of ownership of it upon legal conclusions from the other facts in the case discussed below.

It is further shown in the evidence that the plaintiff has been in possession of all the land to the river, cultivating and growing alfalfa upon it and making hay for many years. That he did not, and does not, now live upon it as his place of residence, but has a house there which is most of the time occupied by certain employees and used in the farm work carried on there. That it is fenced and by means of the fences and the river and certain rock barriers is inclosed against the encroachments of stock. That there is a bluff or steep declivity or cliff of lava rock running through the land easterly and westerly some distance back from the river, forming the southerly edge of the bench of higher land, whereon, though within his boundaries, plaintiff has not attempted any cultivation. All the land cultivated by the plaintiff lies on the lower ground between this bench and the river. It is claimed by the defendant, and is shown by the field-notes, and is undoubtedly true, that in making and platting the survey the meander line on the north side of the river is run along the top of this bench at and near its edge, and that the lower land between it and the river is not included in the survey. From the plat, the lowland south of

the meander line appears to be in the river. However this may be, the lots, if they extend to the river bank, would probably cover and contain at least twice the area called for by the patent and plat. This lower land, under the bench, is the land inclosed and cultivated by the plaintiff, and upon this land the defendant entered, and he admits that the land taken by him and staked out covers and includes at least twenty acres of plaintiff's alfalfa field. It appears that there is a road through this bottom land traveled more or less by the public, but that there are gates, maintained by plaintiff, across the road on both sides of the land, which have been kept closed, and one of them nailed up. There is no evidence that this is a public highway, though there is some testimony to the effect that a road overseer opened the gates or fence about the time of or since this controversy arose. This constitutes, in substance, all the material evidence in the case.

The findings of fact and conclusions of law made by the trial judge are as follows: "1. That plaintiff is the owner of lots 7 and 8, section 6, and lots 5, 6 and 7 of section 5, township 5 south, range 15 east. 2. That said lots are not bounded as set forth in plaintiff's amended complaint. 3. That defendant herein did not, on or about October 14, 1903, or at any other time, claim title to said lots, or any part thereof, nor now claims title by right of possession to any part thereof. 4. That defendant did not fraudulently or stealthily take possession of said land or any other land or maintain possession of said land or any other land by threats of personal violence. 5. That said lots extend to the meander line, on the south, which is the edge of the bluff north of Snake river, and no further. 6. That there is a body of land in excess of the area of said lots, lying between the southern boundary thereof, and the north bank of Snake river. 7. That plaintiff has no title to the land lying south of the southern boundary of said lots. 8. That said last-mentioned land is unsurveyed. 9. That defendant is occupying a part of such unsurveyed land. 10. That defendant is occupying or claiming no part of the lots in plaintiff's complaint mentioned."

"Conclusions of Law.

"1. Plaintiff did not by virtue of his patent to said lots acquire title to the land lying between said lots and the north bank of Snake river. 2. That plaintiff takes nothing by this action, and defendant is entitled to judgment for his costs herein, such judgment to be without prejudice to another action for possession."

After making and filing the findings of fact and conclusions of law above set out, judgment was entered that the plaintiff take nothing by the action and that defendant recover his costs. From the judgment and an order denying a motion for a new trial, plaintiff appeals. Reversed.

The opinion contains a statement of the facts.

E. A. Walters and E. M. Wolfe, for Appellant.

No one but the United States can question the patent and survey. (See *Nuswanger v. Saunders,* 68 U. S. 424, 17 L. ed. 599; *Beard v. Federy,* 70 U. S. 478, 18 L. ed. 88; *Cragin v. Powell,* 128 U. S. 691, 32 L. ed. 566; *St. Paul R. R. Co. v. Schurmeir,* 74 U. S. 272, 19 L. ed. 74; *County of St. Clair v. Lovingston,* 90 U. S. 46, 23 L. ed. 59.) Where a survey and patent show a river to be one of the boundaries of the tract, it is a legal deduction that there is no vacant land left for appropriation between the river and the river boundary of such tract. (*Jefferies v. East Omaha L. Co.,* 134 U. S. 178, 33 L. ed. 872, 10 Sup. Ct. Rep. 518.) It has been held in all courts since the decision of *Atherton v. Fowler,* 96 U. S. 513, 24 L. ed. 732, that a person cannot forcibly and surreptitiously enter upon the actual inclosure of another on the ground that the title was in the United States, and thereby acquire a right of possession to the land within the inclosure, and the fact that defendant alleged that at some future time he intended to connect himself with the government by making application for the land as a homestead, did not give him any right against the plaintiff. An action to quiet title does not make it incumbent on us to prove a patent from the United States, either to Johnson or his

grantor, if this be unsurveyed government land, which claim we deny. Peaceable possession by Johnson, until he was ousted by defendant, is all that we need to prove, unless he proves a better right or higher interest. (*McGovern v. Mowery,* 91 Cal. 383, 27 Pac. 746; *Wilson v. Madison,* 55 Cal. 5; *Funk v. Sterrett,* 59 Cal. 613; *Orr v. Stewart,* 67 Cal. 277, 7 Pac. 693; *Pennie v. Hildreth,* 81 Cal. 127, 22 Pac. 399; *Pierce v. Felter,* 53 Cal. 18; *Fry v. Summers,* 4 Idaho, 424, 39 Pac. 1118.)

McFadden & Broadhead, for Respondent, cite no authorities on the points decided not found in the opinion.

AILSHIE, J. (After Making the Statement.)—The learned trial judge, after an exhaustive review of the authorities bearing upon the questions at issue in the case, announced the following propositions, which seem to us to have controlled his opinion and judgment in this case, and which we therefore quote in full from his opinion:

"If these authorities are to be followed and the principle adduced from them applied to the facts here, it must be held that the plaintiff's lots are bounded by the south line shown on the plat and that by the patent the government did not convey to the plaintiff's grantor any of the lands south of that line; and the court holds that under the facts in this case, the patent to the lots mentioned does not give the plaintiff title to the land to the margin of the river which lies opposite to and between them and the stream, amounting, as it is shown, to a quantity in itself exceeding the acreage bought and paid for by the patentee of the lots.

"Regarding the long-continued occupation and use by the plaintiff of the land under the south line of his lots, there is nothing in the evidence tending to show that his possession was of such a character as in any way to connect him with the government title to unsurveyed land, nor to initiate right or title or privilege to purchase from the government. He has never resided upon it; he inclosed and cultivated it, founding his right to do so upon his understanding and belief that because the plat shows his lots to be bounded by the river on the south, and having bought it, and the government having sold it, upon

these appearances, the patent covered and included it. This, perhaps, is color of title; but whether it is or not, there is nothing tangible which a court can grasp or which is appreciable to the mind as title to the land within the scope and meaning of the word 'title' which the courts can reach and *quiet as title.* He has a possession not connected with any right except such as a bare possession gives him. In brief, he has no title which may be quieted, and his action to quiet title must fail."

In order to obtain a more thorough and comprehensive view of the situation and facts surrounding this case, it will be necessary to examine the official plat of the government survey as filed in the office of the surveyor general, the certified copy of which was introduced upon the trial of this case. A copy thereof showing sections 4, 5 and 6, and the north half of sections 7, 8 and 9, will therefore be reproduced here, and is as follows:

From the field-notes it appears that the surveyor started from the southwest corner of section 6, ran his line north, and upon reaching the "left bank of Snake river" established a meander corner for section 6, and thereupon crosses the river, a distance of 7.60 chains, "to right bank of Snake river" and there established another meander corner for section 6. From thence he ascended 13.04 chains to "top of bluff 200 feet above river." Again we find in the field-notes the surveyor leaving the corner to sections 5, 6, 7 and 8 and "descending gradually"

43.50 chains "to left bank of Snake river canyon, 600 feet above the watercourse," where he establishes a meander corner between sections 5 and 8. And again, upon proceeding north between sections 5 and 6, he "descends gradually" from southwest corner of section 5, "32.50 chains to left bank of Snake river, 600 feet above the watercourse," where he establishes a meander corner between sections 5 and 6. Thence he crosses the river "to right bank of Snake river 800 feet above the watercourse west," where he establishes another meander corner between sections 5 and 6. In the notes of the meanders in sections 5 and 6, the surveyor starts from the meander corner on the north bank of the river where the township line crosses the stream; thence he apparently proceeds up the river, but upon arriving at the line between sections 5 and 6, he notes that he proceeds "thence in section 5 along bluff." After reaching the meander corner between sections 4 and 5, he crosses the stream to the meander corner between sections 5 and 8 and proceeds to run the meander line down the stream on the left bank thereof, and notes: "I run in section 5 along high bluff"; but upon reaching the meander corner on the left bank of the river between sections 5 and 6, and as he is about to proceed on down the river, he notes: "Thence in section 6," but makes no mention as to whether he is proceeding along the bluff or bank or the water's edge.

It should be observed in the outset that according to the fieldnotes and the official plat founded thereon, all the lands contained in sections 5 and 6 appear to have been surveyed both upon the north side as well as the south side of the Snake river. The plat shows 381.85 acres of land contained in the fractional section 5, and 527.77 acres in fractional section 6. The plat shows the remainder of those fractional sections as being taken up or covered by the Snake river. It is therefore clear that so far as the government is concerned, and the general land office which represents that branch of the government, all the lands lying within section 5 and 6 have been surveyed and returned to the land office, and the lands therein contained have been thrown on the market for settlement and sale. No other survey has ever been made by or on account of the government,

and it appears in evidence in this case, that the defendant went to the land office and applied to file upon the lands which he now occupies, and was informed by the proper officials that there was no vacant land within those sections, and his application to file was thereupon rejected. The government has at no time complained of the plaintiff having or occupying more land than belongs to him, nor has it ever asserted any right to any part thereof. In this connection it should be further observed that upon the official plat no distinction is made between the lines meandering the Snake river through sections 5 and 6 and the lines representing the right and left banks of the Snake river through those same sections. The conclusion would necessarily follow that the meander line on the right bank of the river is the same as and coincides with the water line on that side of the river, and the same is true of the meander line and water line on the left bank. This same conclusion is deducible from the field-notes except as to the meander lines through section 5. Considering the field-notes and plat themselves, separate and apart from any oral testimony in the case, the conclusion would necessarily be that the meander lines run through section 5 are on the banks of the river, and that the banks are precipitous bluffs ranging from 200 to 800 feet above the water.

The primary question which arises in this case is: Has the plaintiff any such title to the land in controversy that he can maintain his action under section 4538, Revised Statutes, to determine and quiet the same? The principal contention made by the defendant and that upon which the trial court apparently decided the case, is that the plaintiff by his patent from the government only acquired title to the meander line, and that all the lands between that line and the water line of the river are the public, unsurveyed and unappropriated lands of the United States, to which the plaintiff has no title or right. It is conceded as the general rule of law that the meander line run in surveying public lands bordering upon a navigable river is not a line of boundary, but one designed merely to point out the sinuosity of the bank of the stream, and as a means only of ascertaining the quantity of land in the fraction that is to be

paid for by the purchaser, and that the watercourse, and not the meander line as actually run on the land, becomes the true boundary line. (*Horne v. Smith,* 159 U. S. 40, 15 Sup. Ct. Rep. 988, 40 L. ed. 63; *St. Paul R. R. Co. v. Schurmeier,* 74 U. S. (7 Wall.) 272, 19 L. ed. 74; *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. Rep. 808, 838, 35 L. ed. 428; *Jefferies v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. Rep. 518, 33 L. ed. 872; *Fuller v. Dauphin,* 124 Ill. 542, 7 Am. St. Rep. 388, 16 N. E. 917; *Clute v. Fisher,* 65 Mich. 48, 31 N. W. 614; *Ridgway v. Ludlow,* 58 Ind. 249; *Kraut v. Crawford,* 18 Iowa, 549, 87 Am. Dec. 414; *Schurmeier v. St. Paul R. R. Co.,* 10 Minn. 82, 88 Am. Dec. 59; *Mitchell v. Smale,* 140 U. S. 406, 11 Sup. Ct. Rep. 819, 840, 35 L. ed. 442; *Stoner v. Rice,* 121 Ind. 51, 22 N. E. 968, 6 L. R. A. 387.)

It is claimed, however, by the respondent in this case that there is an exception to the general rule, and that where the quantity of land between the meander line and the water line is equal to or in excess of the amount contained in the fraction up to the meander line, that then the rule ceases and the exception prevails, and in such case the meander line is also the boundary line. In support of this proposition we are cited to the following authorities: *Barnhart v. Ehrhart,* 33 Or. 274, 54 Pac. 195; *Little v. Pherson,* 35 Or. 51, 56 Pac. 807; *Horne v. Smith,* 159 U. S. 40, 15 Sup. Ct. Rep. 988, 40 L. ed. 68; *Niles v. Cedar Point Club,* 175 U. S. 300, 20 Sup. Ct. Rep. 124, 44 L. ed. 174; *Glenn v. Jeffery,* 75 Iowa, 20, 39 N. E. 160; *Bissell v. Fletcher,* 19 Neb. 725, 28 N. W. 303; *Fuller v. Shedd,* 161 Ill. 462, 52 Am. St. Rep. 380, 44 N. E. 286, 33 L. R. A. 116; *Fulton v. Frandolig,* 63 Tex. 330; *Lammers v. Nissen,* 4 Neb. 245.

*Barnhart v. Ehrhart* was an action for trespass. The plaintiff alleged that he was the owner of certain lots in fractional sections in Umatilla county, adjoining the Umatilla Indian Reservation. It appeared in that case that a couple of surveys had been ordered of the tract of land and that each new plat made differed from the other. The original survey as shown by the field-notes and plat appeared to have meandered "the dry bed of a creek" called Wild Horse creek. It appeared quite

conclusively that the line in that case did not purport to meander a navigable stream as meander lines are authorized by section 2395, United States Revised Statutes. The meander line there, however, appears to have been run under the provisions of that section authorizing such lines where a survey abuts on an Indian reservation. The real difficulty in that case appears to have been that the line did not really meander the line of the Indian reservation, and vacant land was therefore left between the two. It is true that the court in that case announced the general exception contended for by the respondent in this case. The opinion, however, concludes with this significant language: "The field-notes of the survey of 1871 do not purport to be a meander of Wild Horse creek, nor does the amended plat contain the name of that stream, and, as the original field-notes showed 'the dry bed of a creek' at the section lines crossed by Wild Horse creek, it may be that the surveyor erred in locating the boundary of the Indian reservation, in view of which the instruction requested became important; and hence it follows that the judgment is reversed, and a new trial ordered." *Little v. Pherson* rests entirely for its authority upon *Barnhart v. Ehrhart.*

In the case of *Horn v. Smith* the appellant, who owned fractional sections abutting on a bayou or savannah opening into the Indian river in Florida, claimed that the true boundary of his land was the main stream of Indian river. The facts in that case are well illustrated by the language used by Mr. Justice Brewer as follows: "But the question in this case is whether the boundary of these lots is the bayou or the main body of the river. That a water line runs along the course of the meander line cannot, of course, in the face of the plat and survey, be questioned, but that the meander line of the plat is the water line of the bayou, rather than that of the main body of the river, is evident from the facts. In the first place, the area of the lots is given, and when that area is stated to be 170 acres, it is obvious that no survey was intended of over 700 acres. In the second place, the meander line, as shown on the plat, is, so far as these lots are concerned, wholly within the east half of sections 23 and 26, while the water line of the main body of the

river is a mile or a mile and a quarter west thereof, in sections
22 and 27. Again, the distance from the east line of the sec-
tion of the meander line is given, which is less than a quarter
of a mile, while the distance from such east line to the main
body of the river must be in the neighborhood of a mile and a
half. Further, the description in the patent is of certain lots
in sections 23 and 26, and, manifestly, that was not intended to
include land in sections 22 and 27.

"These considerations are conclusive that the water line
which was surveyed and made the boundary of the lots was the
water line of the bayou or savannah, and there has been simply
an omission to make any survey of the tract west of the bayou,
and between it and the main body of the Indian river.

It is significant that in that case the lots claimed were por-
tions of sections 23 and 26, and the meander lines thereof were
within those sections, while the water line of the river was
about a mile and a quarter to the west and in sections 22 and
27. It was therefore clear that the lots claimed by the plain-
tiff in that case were not to be found within the confines of the
sections containing the lots for which he had received patent.
This was one of the strong considerations which moved the
court to hold that the lots claimed by the plaintiff had never
been surveyed, and had never been intended to belong to or be-
come a part of those legal subdivisions. It was held, however,
that his line should go to a water line. That line was the
water line of the bayou and not of the main stream.

*Niles v. Cedar Point Club* was a "marsh" case. It appears
that the notes and official plat to which the patent referred
showed that the survey ended at the marsh and did not purport
to be a river, stream or other navigable body of water, and the
court held that the plaintiff took his title with notice that he
was not securing the marsh, but *only to the marsh.* The fol-
lowing language from that opinion shows clearly the principle
upon which it is founded: "The meander line run by Surveyor
Rice along the northern borders of the tracts patented to Mar-
garet Bailey may not have been strictly a line of boundary (*St.
Paul & P. R. Co. v. Schurmeir,* 7 Wall. 272, 19 L. ed. 74; *Har-
din v. Jordin,* 140 U. S. 371, 380; 35 L. ed. 428, 432, 11 Sup.

Ct. Rep. 808, 838; *Horne v. Smith,* 159 U. S. 40, 40 L. ed. 68, 15 Sup. Ct. Rep. 998), but it indicated that there was something which had stopped the survey, which limited the area of the land which the United States was proposing to convey, and left to subsequent measurements the actual determination of the line of separation between the land conveyed and that which the government did not propose to convey. Generally, these meandered lines are lines which course the banks of navigable streams or other navigable waters. Here it appears distinctly from the field-notes and the plat that the surveyor, Rice, stopped his surveys at this 'marsh,' as he called it. These surveys were approved and a plat prepared, which was based upon the surveys and field-notes, and showed the limits of the tracts which were for sale. The patents, referring in terms to the survey and plat, clearly disclose that the government was not intending to and did not convey any land which was a *part of the marsh.*"

*Glenn v. Jeffery* was a "bayou" case and very similar in principle to the Niles case.

I1 *Bissell v. Fletcher* it appears that at the time of the original survey there were two channels to the Republican river in Nebraska, and that the meander line followed the north channel of the river. After the plaintiff secured his patent for the fractional lots meandered on the north channel, the government appears to have caused a survey to be made of the lands between the north channel and the main channel of the stream and a patent was issued to the defendant for fractional lots therein. The controversy thus arose between the two grantees; the first claiming the lands to the main channel of the river, and the court holding that the original survey only extended to the north channel and that the patentee to those fractions did not acquire title to any of the lands south of the channel. That case we do not think throws any light upon the question under consideration.

In *Fuller v. Shedd* the supreme court of Illinois reviewed the authorities upon this question quite exhaustively, after which it said: "From these cases it will be seen, if there is such

a mistake by the omission of lands in the survey between the meander line and the water that the proportion to that sold is great, it may be corrected by a resurvey. In the case here before the court the field-notes show the running of the meander line was across the ridge and at both the south and north sides of the lake. There was not such an omission of land from the survey that it is apparent a mistake was made, nor is there in the survey any evidence of fraud in the manner in which it was done."

*Fulton v. Frandolig* was an action for trespass, and the only question considered there was that of accretion and reliction, and is no guide for this case.

*Lammers v. Nissen* was a controversy between two patentees from the government where the original survey had left out a large tract of land between the meander line and the Missouri river. The government had thereafter recognized the mistake and had a survey made of the unsurveyed portion and thereafter patented it to the defendant. The court in that case held that the plaintiff could not recover beyond the meander line.

A careful examination of all these authorities discloses the fact that in no case considered have the facts been similar to those in the case at bar. In no case called to our attention where the court has refused to allow the grantee's true boundary line to extend to the main stream or water line has it appeared that the strip or tract of land claimed was within the section that contained the fractional lots patented, nor does it appear in any of those cases that the lands were returned as surveyed on all sides of the tract claimed. In other words, wherever it has appeared from the notes and official plats that all the lands within the legal subdivision as directed to be surveyed by the United States statutes have been returned as surveyed and the remainder of those subdivisions is shown to be the waters of a navigable stream, the courts have uniformly held that the grantee to lots or fractional subdivisions abutting on the meander line, takes title to the stream. The grantee would be at least entitled to take to the extent of the entire subdivision of which he has obtained patent to the fractional part. (*Stoner*

·x. Rice, 121 Ind. 51, 22 N. E. 968, 6 L. R. A. 387). Here there is no definite or satisfactory evidence showing the amount of land between the meander line and the stream; indeed, the true location on the ground of the meander line as traced from the field-notes is not shown or attempted to be shown. No surveyor testified in the case, and it does not appear that any surveyor ever attempted to locate the meander line. Some measurements were testified to by the defendant and his father in law, and a map was introduced (by whom made does not appear) which contains a yellow line drawn along the general course of Snake river, purporting to show the true location of the north bank of the river as it actually flows through those sections. That bears on its face some suspicion, however, by reason of the fact that it shows lots, located by the official survey on the south bank of the river, as actually north of the river. An official plat and survey cannot be impeached in this manner so as to transport a settler across the stream from the place of his actual settlement. (Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. Rep. 203, 32 L. ed. 566, and authorities there cited.) It is, however, an admitted fact in this case that the tract between the meander line and the water line comprises approximately as many acres as the patent recites as being in the lots themselves.

In this case the government by its patent has granted all its title to the five lots or fractional subdivisions in question to plaintiff's grantor and by that patent, which refers to the official plat in aid of the description contained in the patent, and from an inspection of which it appears that those lots comprise all the land between their northern boundary and the water line of the river. The government has never complained of any fraud having been practiced or any mistake having been made. It has never ordered a resurvey nor an additional survey and has never been heard to complain of the claims of the plaintiff. On the contrary, the plaintiff entered under his conveyance and took possession of the lands in question, and has improved, cultivated and occupied the same for more than seventeen years under color of title deraigned through the patent issued to his grantor. We know of no principle of law whereby any third

party can now be heard to complain. If the government has parted with title to a larger acreage than it received pay for, that fact cannot concern the defendant nor any other third person who does not claim title from the government. Indeed, there is doubt if the government itself, under the facts in this case, could now be heard to question the plaintiff's title; but with that issue we have nothing to do in this case.

If it were conceded as a legal proposition that the plaintiff derived no title through the patent which was issued to these lots, still having entered upon the land in controversy situated between the bluffs and the meander line of the river, and having improved, cultivated and exercised complete dominion and control over that land for a period of seventeen years, and in the meanwhile never having had his title questioned, he would still, in our judgment, be able to maintain his action under section 4538, Revised Statutes, as against the defendant to quiet his title. By that section it is provided: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

Sections 16 and 2825, Revised Statutes, recognize possessory rights to land as real property. Taking, in connection with these statutes, the legal presumption of title which always accompanies possession, we think the action to quiet title may be maintained although the plaintiff failed to show a fee simple title. It is clear that a person occupying premises under the circumstances surrounding this case, although his title from the government should entirely fail, still has a "color of title."

In *Wright v. Mattison*, 59 U. S. (18 How.) 50, 15 L. ed. 280 it is said: "The courts have concurred, it is believed, without an exception, in defining 'color of title' to be that which in appearance is title, but which in reality is not title. They have equally concurred in attaching no exclusive or peculiar character or importance to the ground of the invalidity of an apparent or colorable title; the inquiry with them has been whether there was an apparent or colorable title, under which an entry or a claim has been made in good faith. . . . . A

claim to property, under a conveyance however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass a title to the subject thereof, yet a claim asserted under the provisions of such a deed is strictly a claim under color of title."

In *Cameron v. United States,* 148 U. S. 308, 13 Sup. Ct. Rep. 595, 37 L. ed. 462, Justice Brown speaking for the court, said: "It is true there are cases to the effect that color of title by deed cannot exist as to lands beyond what the deed purports to convey; but where the deed is fairly open to construction as to what it does purport to convey, and at the time it was executed the land was officially surveyed according to the theory of the party claiming under such deed, it is manifest these authorities have no application. Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt arises from the circumstances under which the land is held, the identity of the land conveyed or the construction of the instrument under which the party in possession claims his title."

In California it has been held that the action to quiet title under section 738 of the Code of Civil Procedure, and which is identical with our section 4538, embraces "every interest or estate in land of which the law takes cognizance." (*Pierce v. Felter,* 53 Cal. 18; *Wilson v. Madison,* 55 Cal. 5; *Orr v. Stewart,* 67 Cal. 277, 7 Pac. 693; *Pinnie v. Hildreth,* 81 Cal. 130, 22 Pac. 399. Last two cases cited with approval in *Pioneer Land Co. v. Maddox,* 109 Cal. 640, 50 Am. St. Rep. 67, 42 Pac. 295.)

This court held to the same effect in *Fry v. Summers,* 4 Idaho, 424, 39 Pac. 1118.

The plaintiff made a showing which entitled him to recover. The defendant was a naked trespasser and established no right either at law or in equity. Entertaining the views of this case as herein expressed, we see no reason for ordering a new trial.

The judgment will be reversed and the cause remanded, with direction to the trial court to make findings upon the evidence

heretofore introduced in harmony with the law of the case as herein announced, and render judgment in accordance therewith.  Costs awarded to appellant.

Sullivan, C. J., and Stockslager, J., concur.