## ST. LOUIS BUTTON COMPANY v. MARTIN.

No. 738.   Opinion Filed January 10, 1911.

**SALES—Refusal to Accept—Action for Price—Sufficiency of Evidence.**
Evidence examined and held sufficient to require the case to be submitted to the jury, and that defendant's demurrer thereto was improperly sustained.

(Syllabus by the court.)

*Error from Pottawatomie County Court; E. D. Reasor, Judge.*

Action by the St. Louis Button Company against Stephen N. Martin. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Paul F. Cooper,* for plaintiff in error.
*B. B. Blakeney, J. H. Maxey,* and *C. J. Benson,* for defendant in error.

HAYES, J.   Plaintiff in error, herein referred to as plaintiff, brought this suit in the court below against defendant in error, herein referred to as defendant, to recover on an oral contract entered into between them at the office of plaintiff in St. Louis, Missouri, on November 9, 1907. A demurrer to plaintiff's evidence was sustained by the trial court, and judgment rendered thereon in favor of defendant, to review which this proceeding is prosecuted.

The evidence establishes that on November 9, 1907, the defendant called at the office of plaintiff in St. Louis and entered into an oral agreement with it to have it manufacture for him 5,000 combination celluloid, metal and ribbon badges, to be used at the inauguration of the state of Oklahoma at Guthrie on November 16, 1907. The price agreed upon for the badges was the sum of $245. At the time the order was placed, plaintiff's manager stated to defendant that the terms were cash, and that plaintiff would expect payment in full from him at once before making up the goods. In answer thereto, defendant replied that he was good for the money, and that Coffin & Lambard, who were backing him, were good for the money, and that Coffin & Lambard were "well rated in Dun's." Plaintiff's manager told defendant that if that statement was true, he would accept a check for one-half of the price of the badges and would draw through a bank for the balance. Defendant then gave to plaintiff his check drawn on the Bank of Commerce of Shawnee for the sum of $122.50. The badges were to be consigned to Coffin & Lambard at Shawnee, Oklahoma. Plaintiff was also to prepay the expense of shipping, including freight, and the amount thereof was to be repaid to it by defendant. Defendant, at the time of giving the order, stated that he would like to have all the badges shipped on Monday, the 11th day of November, if possible; but he was informed by plaintiff's manager that, on account of not having the badges in stock and their having to be manufactured, it would be impossible for plaintiff to turn out the complete order and ship them by that date, but that plaintiff would do the best it could and hoped to ship a part of them on Monday the 11th and the balance on the day following the first shipment; that no agreement was made that the goods should be delivered to defendant on any definite date, or as to when shipment would be made, except that plaintiff agreed to hurry the order as much as possible and hoped to be able to ship in the manner and at the time above mentioned. As soon as the order was placed, plaintiff immediately began the work of manufacturing the badges; and on Tuesday, the 12th day of No-

vember, 3,000 of the badges were shipped by it C. O. D. to Coffin & Lambard at Shawnee, Oklahoma. On the 13th day of November, plaintiff was informed that the check given to it by defendant, which had been by them sent forward for collection, had been refused payment by the bank on which it was drawn. Upon receipt of this information, plaintiff directed that the check be protested, which was done on the 14th by the drawee for want of funds. Upon receipt of the notice that the check had not been paid by the drawee, plaintiff wired the agent of the express company at Shawnee to raise the C. O. D. on the first shipment of badges that had gone forward on the 13th to the full amount of the order in the sum of $245 and charges. The remainder of the badges were shipped by express, consigned to the same firm on November 13th. Defendant refused to receive the first shipment on its arrival, but wired to plaintiff that his check had been protested by mistake; that he refused to accept the shipment unless the C. O. D. condition was released; that if plaintiff would draw on him and release the consignment, he would accept the goods. This, plaintiff refused to do, and defendant has refused to accept the goods or to pay for same, and they are now in the express office at Shawnee.

Defendant contends that the demurrer to plaintiff's evidence was properly sustained, for the reason that it showed a breach of the contract on plaintiff's part, which relieved and discharged defendant from accepting the goods, in that the goods were shipped C. O. D. instead of open; also that the evidence failed to show what damage, if any, plaintiff suffered by reason of defendant's failure to accept and pay for the goods.

Some of the assignments complain of the rejection of certain testimony offered, but they are without merit. The principal question in this case is: Was the refusal of plaintiff to deliver the goods without payment of the purchase price such violation of plaintiff's contract as to release defendant? We think not. There was nothing said between the parties as to whether the goods should be shipped open or upon bill of lading, with draft attached. We think, however, it is apparent from the entire

transaction that it was intended by the parties that it should be a cash transaction, and full payment of the purchase price should be made by the time of the delivery of the goods. No credit was asked or given. Plaintiff at first demanded that the entire purchase price be paid in advance, before the work of manufacturing the badges was begun; but, upon being assured by defendant that both he and the consignee were responsible, it was agreed that one-half of the amount should be paid in advance, which was done with the check given by defendant, and the other half was to be paid upon draft drawn by plaintiff. In the absence of any stipulation to the contrary, a cash sale is generally presumed to have been contemplated by the parties. In the instant case we are not left entirely to presumption as to the intentions of the parties, for the undisputed testimony is that one-half was to be paid in advance, and there can be but little, if any, doubt as to the intention of the parties as to the other half. The only difference ever existing between them at any time as to the terms of the sale was as to whether the entire amount should be paid before any of the articles were begun to be manufactured, or whether paid in the manner agreed upon. When defendant gave his check for one-half of the purchase price, there was an implied agreement and representation on his part that the check would be paid when presented to the bank upon which it was drawn, and that his check was equivalent to the cash. But it was never paid, because he had no funds at the bank with which to pay it. There was, therefore, a violation by him on his part of the contract from the date it was entered into; and before the time had arrived for plaintiff to perform in full its part of the contract by delivering the badges to defendant, defendant had put himself in default and by breach of his contract had relieved plaintiff from the necessity of offering to deliver in order to entitle it to recover any damages it may have sustained by the reason of defendant's breach of his contract. *Scribner & Co. v. Schenkel,* 126 Cal. 250; *Lewis v. Craft,* 39 Oreg. 305. If the check had been paid, plaintiff would have been entitled to payment of the balance on the purchase

price when it delivered the badges. This would have been the case if no agreement in reference thereto had been made.

In *Palmer v. Hand*, 13 Johns, 434, the court stated:

"When goods are sold to be delivered by the vendor without any stipulátion for credit, it is his right to demand payment immediately upon their delivery; the payment being refused, he may reclaim the goods. Ordinarily, this right to reclaim should be exercised promptly after refusal of payment."

To require a vendor, under the circumstances in the case at bar, to make an unconditional offer of delivery to a purchaser who has already violated his contract to pay part of the purchase price in advance, is to enable irresponsible purchasers to secure the property of the vendor and place it in his power to immediately transfer it to some innocent purchaser and thereby destroy all chance of the vendor to secure payment for his property or to secure a return of the property.

It is also insisted that the evidence fails to show what amount of damages, if any, plaintiff has sustained. The testimony of plaintiff upon that point was to the effect that the badges were manufactured for a special occasion; and that after defendant refused to take them, they were practically valueless; and that plaintiff could not use them for anything else. We think this evidence was equivalent to saying that they were without any value; or, at least, we cannot say that such would not be a reasonable inference from it.

The judgment of the trial court is accordingly reversed, and the cause remanded.

All the Justices concur.