## MITCHELL *v.* LA FOLLETT.

[63 Pac. 54.]

SALES — ACTION FOR BREACH — EVIDENCE.

1.   Defendant contracted to deliver certain potatoes in sacks furnished by defendant f. o. b. on boat by June 1, if possible. In an action by plaintiff for an alleged breach of contract, in refusing to deliver the potatoes, defendant denied the breach, and alleged that on May 27 plaintiff proposed to take the potatoes at defendant's farm, where they were situated, to which he agreed, provided the balance of the purchase money was paid before removal, which plaintiff refused to do, and repudiated the contract, performance of which defendant tendered several times. *Held*, that it was not error to permit defendant to testify that after the twenty-seventh of May he continued sacking the potatoes, and, not having sufficient sacks, was obliged to go to plaintiff's agent, and get more; it not being admitted to show a breach of contract by plaintiff in failing to furnish sacks, but that defendant was proceeding to comply with the contract by preparing the potatoes for delivery.

HARMLESS ERROR.

2.   Error, if any, in admitting in evidence a written offer or tender of the potatoes specified in the contract, on June 8, was harmless, since plaintiff did not claim a breach by failing to deliver on time, and defendant did not claim that it was impossible to do so.

INSTRUCTIONS — THEORIES OF RESPECTIVE PARTIES.

3.   It is the duty of a trial judge to give the jury such instructions as will fairly present the theories of the respective parties, and to refuse an instruction that ignores the theory of one party.

ENTIRE CHARGE MUST BE CONSIDERED.

4.   In determining the correctness of an instruction to a jury, the entire charge must be considered.

From Marion: GEO H. BURNETT, Judge.

Action by McKinley Mitchell against J. W. La Follett, brought on July 9, 1898, by the plaintiff, Mitchell, against the defendant, La Follett, to recover damages for a breach of the following contract:

"Gervais, Oregon, May 17, 1898.

"This is to certify that I have this day sold to McKinley Mitchell, of Gervais, Oregon, all my potatoes supposed to be 700 to 900 sacks, outside of the seed stock, on the following conditions, as follows, to wit:    All stock put up as strictly choice fancy potatoes, to be 25 cents per bushel, net cash, on delivery on the river, sacks furnished; all put up as No. 1 merchantable potatoes, to be 22 cents per bushel, net cash, delivered on the river, sacks furnished; and all the seed potatoes put up as No. 1 (all to be well sacked, and put up in No. 1 shape, and put on the boat f. o. b.), 12½ cents per bushel—all to be delivered, if possible, by June 1, 1898. And I hereby acknowledge receipt of $20.00 on sale of same.

[Signed] "J. W. LA FOLLETT."

The complaint alleges that, in pursuance of the contract, the plaintiff paid the $20 therein mentioned, and furnished defendant 725 sacks, of the value of $36.25; that on or about the twenty-seventh of May, 1898, the defendant repudiated the contract, and informed him that he would not deliver the potatoes as stipulated or at all, and "ever since has and still does refuse to deliver the said potatoes to this plaintiff or any part thereof"; that, upon such refusal, the plaintiff demanded a return of the $20, and payment for the sacks furnished, but defendant refused to pay the same or any part thereof; that the potatoes were purchased for resale, and defendant was so informed at the time; that, by reason of the breach of the contract by the defendant, plaintiff has been damaged in the sum of $100 as loss of profits, in addition to the money paid thereon and the value of the sacks furnished.    The answer denies the breach of the contract as alleged in the complaint, and for an affirmative defense avers that, on or about the twenty-seventh of May, the plaintiff proposed to take the potatoes at the defendant's farm, where they were situated, and the defendant agreed to so deliver them, provided the plaintiff would pay the balance due before their removal, which he refused to do, and then and there notified the de-

fendant that he would not accept the potatoes at any time or place; that he has ever since refused, and does now refuse, to accept or receive the potatoes, or any part thereof, although the defendant was then, is now, and ever since has been, ready and willing to deliver them, and at divers times thereafter, and before the commencement of this action, offered and tendered to him the whole of the potatoes, sacks, and twine; that defendant has duly and fully performed, and offered to perform, all the conditions and provisions of the contract on his part. The reply puts in issue the new matter alleged in the answer. A trial was had, resulting in a verdict for the defendant, from which the plaintiff appeals, assigning error in the admission of testimony, giving certain instructions to the jury, and refusing others requested by the plaintiff.

For appellant there was a brief over the names of *E. P. Morcom* and *John A. Carson,* with an oral argument by *Mr. Carson.*

For respondent there was a brief over the names of *Wm. M. Kaiser* and *Woodson T. Slater,* with an oral argument by *Mr. Kaiser.*

Mr. Chief Justice Bean, after stating the facts, delivered the opinion of the court.

1. Upon the trial, the defendant, as a witness in his own behalf, gave evidence tending to show that on May 27 the plaintiff requested that the potatoes be delivered at Brooks Station, instead of the river, as stipulated in the contract, and that when he declined to do so the plaintiff unequivocally refused to accept the potatoes, and so notified the defendant. He was thereupon asked the following questions: "Well, then, what did you do with the potatoes after he went away? A. I kept on sacking them. Q. Did you have all your sacks

there at that time, and, if not, where did you get the balance?"  Objection was made to the last question on the ground that the pleadings admit that defendant received 725 sacks from the plaintiff, and there is no allegation in the answer that the plaintiff had refused to provide sacks as stipulated in his contract.  The court overruled the objection, and the witness answered: "No; I had only 525.  The next Monday — that was on Friday, the twenty-seventh — the next Monday I went over to Brooks, and saw Mr. Dorcas (plaintiff's agent) about sacks.  He said for me to drive over to the depot and get them, and I got them, and filled them."  It is argued that this evidence is incompetent, because the answer does not set up as a defense a breach of the contract by the plaintiff in failing to furnish sacks.  But we do not understand it to have been offered or admitted for the purpose of showing a breach of the contract by the plaintiff, but that defendant was proceeding to comply with the contract on his part subsequent to the transaction of the twenty-seventh of May, by procuring sacks from the plaintiff's agent, and preparing the potatoes for delivery, in accordance therewith; thus refuting the allegation that defendant repudiated the contract at that time.  The entire theory of the defense, as we understand the record, is that defendant was at all times ready and willing to perform his contract, and the evidence objected to, as well as the other evidence given by him, was in support of such theory.

2.  It is next insisted that the court erred in permitting the defendant to give in evidence a written offer or tender made on the eighth of June to the plaintiff of the potatoes specified in the contract.  The ground of the objection to the admission of this testimony is that under the contract the potatoes should have been delivered at the river by June 1 if possible, and, since the answer does not allege that it was not possible to make the delivery within the time stipulated, evidence of an offer or tender after that date is in-

competent. But the plaintiff is not seeking to recover because the defendant did not deliver the potatoes within the time stipulated, nor is the defense based on the theory that it was impossible for the defendant to comply with his contract in that respect. The action is grounded on an alleged repudiation of the contract by defendant before the time for delivery, and the complaint seems to have been drafted upon the hypothesis that plaintiff was ready at all times, up to the commencement of the action, to receive the property, but that defendant refused to deliver it to him. It is alleged that on the twenty-seventh of May the defendant informed plaintiff that he would not deliver the potatoes, and that he has ever since refused, and still refuses, to comply with his contract. The answer denies the breach alleged in the complaint, and avers that the defendant was ready and willing at all times to perform, and offered and tendered performance to the plaintiff, both prior and subsequent to the first of June, but plaintiff refused to accept such tender. The reply denies that any tender was ever made by the defendant, so that, as the pleadings stand, the question of time is immaterial, and the admission of the offer to deliver on the eighth of June was therefore harmless, if error at all.

3.   It is also insisted that the court erred in refusing to give the following instruction requested by the plaintiff: "I further charge you that the plaintiff was not obliged to pay for the potatoes until the same were delivered f. o. b. the boat on the river, and, if the defendant demanded payment at any time before the potatoes were delivered on the boat on the river, he thereby violated the contract, and plaintiff is entitled to recover damages from him. Under the contract in this case, it was the duty of the defendant to deliver the potatoes to the plaintiff f. o. b. the boat on the river—it is so stated in the contract—and by the expression 'free on board the boat' you will understand that the defendant was bound to take the potatoes and place them on

the boat on the river at his own expense." As we have already said, the defendant gave evidence tending to show that the plaintiff required the potatoes delivered at Brooks Station, but defendant refused to so deliver them unless they were paid for at his farm, and hence the court could not properly have charged the jury that a demand of payment before the potatoes were delivered on the boat would have been a breach of the contract entitling plaintiff to recover damages, without disregarding the defendant's theory of the case and the evidence given in support of it.

4. It is also insisted that the court erred in charging the jury as follows: "But the mere refusal of Mr. La Follett to deliver the potatoes at the farm, unless paid therefor, would not, of itself, entitle Mr. Mitchell to sue and recover damages." This is but an excerpt from the general charge, and, when read in connection with its context, is not objectionable. The defendant was under no obligation to deliver the potatoes at the farm, and, if the plaintiff desired delivery there, it would be no breach of the contract for the defendant to refuse to make such delivery, unless upon payment of the purchase price. The charge of the court is to the effect that if the defendant, before the date fixed for the delivery, notified the plaintiff that he would not, under any consideration, fulfill his contract, it would be such a breach as would entitle the plaintiff to bring an action for damages without an offer to perform on his part, but a mere refusal to deliver at the farm, unless the potatoes were paid for, would not be such a breach. In this connection, the court said: "The question for you to determine now is whether Mr. La Follett before the first of June unequivocally refused to perform the contract. He may have refused to enter into a new contract, and he may have refused to deliver at the farm without pay in advance, but that, in itself, would not prove that he refused to deliver at the river, and Mr. Mitchell must show that he refused to deliver at the river before the first of June;

otherwise, he could not base any action on what occurred on the twenty-seventh of May.  *  *  *  In other words, the obligation is mutual.  If, without having a right to do so, Mr. La Follett, before the day prescribed in the contract, unequivocally refused to perform the contract, that would excuse Mr. Mitchell, and Mr. Mitchell could turn right around and sue for damages.  Mr. La Follett having refused to perform the contract, Mr. Mitchell would not be obliged to wait until the expiration of the time.  On the other hand, if Mr. Mitchell did refuse to take the potatoes on the river, and tell Mr. La Follett he would not take the potatoes, that would excuse Mr. La Follett from performing it.  So the question is whether Mr. La Follett refused to perform that contract and deliver the potatoes at the river, and Mr. Mitchell must make a better case." We think there was no error in giving the instruction complained of, and, as this disposes of all the questions presented by the argument, the judgment of the court below must be affirmed; and it is so ordered.

AFFIRMED.

Decided 31 December, 1900.