Decided 11 August, 1902.

## LA FOLLETT *v.* MITCHELL.

[69 Pac. 916.]

INCONSISTENT POSITIONS DURING TRIAL.

1. A party who has alleged a certain thing to be true cannot afterward, during that trial and without an amendment of the pleadings, deny or question the truth of such allegation: For instance, where, in an action by a seller against a buyer for breach of the sale contract, plaintiff set up as an excuse for nonperformance on his part an attachment levied on the goods by defendant, and defendant in his answer alleged that the attachment writ was placed in the hands of a certain person, as constable, for service, and that, under defendant's direction, such person as constable levied on the produce, defendant was thereby precluded from questioning the official character of the alleged officer.

ATTACHMENT—OFFICIAL CHARACTER OF OFFICER.

2. In an action for damages by a contract seller against the purchaser for refusing to receive the goods contracted for, the official character of a person who, at the buyer's instance, levied an attachment on the goods contracted for sale, thereby rendering the seller unable to deliver them, is not material to the sufficiency of such levy as an excuse for nondelivery.

ATTACHMENT—CONCLUSIVENESS OF OFFICER'S RETURN COLLATERALLY.

3. In an action for damages by a contract seller against the purchaser for refusing to receive the goods contracted to be bought, the seller alleging that the buyer had caused an attachment to be levied on the property, whereby it was taken from his possession and he was unable to deliver as he had contracted to do, the return of the officer is not conclusive as to what was done under the attachment, but the actual facts may be shown by parol, since the validity of the attachment itself was not in question.

JUDGMENT AS ESTOPPEL TO A SUBSEQUENT ACTION.

4. The effect of a judgment as an estoppel against the prosecution of a second action upon the same claim or demand, if upon the merits, is an absolute bar, conclusive not only as to every matter that was actually litigated, but also as to every matter that might have been litigated; but where the second action, although between the same parties, is upon a different claim, the prior judgment operates as an estoppel against only those matters that were directly in issue: For example, where, in an action by a contract buyer against the seller for failure to deliver according to contract, the seller made an affirmative defense that the buyer had refused to receive the

42 OR.—30

property when tendered, to his damage, a judgment in defendant's favor for costs is not a bar to a subsequent action by the seller against the contract purchaser for damages resulting from his refusal to receive the property when tendered, since the judgment for costs was only an adjudication that the buyer was not entitled to damages for refusal to deliver, and did not determine the rights of the seller against the buyer growing out of the latter's refusal to receive.

RES JUDICATA—INCONSISTENT POSITIONS DURING DIFFERENT TRIALS.

5. Where, in a damage action by a buyer against a seller for a breach of the sale contract, consisting of an alleged repudiation thereof before the time for delivery arrived, defendant filed an affirmative answer, setting up a breach by plaintiff in refusing to receive, and judgment was rendered for defendant for costs, inconsistency between such answer and the complaint in a subsequent action by the seller against the buyer for his refusal to receive was no defense to the second action, the only question in the former action having been as to repudiation by the seller.

From Marion: JAMES W. HAMILTON, Judge.

This is an action by Joseph W. La Follett against McKinley Mitchell to recover damages for breach of a contract. On May 17, 1898, the plaintiff and defendant entered into a contract, whereby the former agreed to sell and deliver to the latter by June 1, 1898, if possible, f. o. b. boat on the Willamette River, all his crop of potatoes, which it was supposed would amount to from 700 to 900 sacks, defendant to furnish the sacks and pay a certain stipulated price for the potatoes when so delivered. Soon after making the contract, the plaintiff, with five employes, entered upon its performance, sacking and putting the potatoes in condition for delivery. On May 27th the defendant proposed a modification of the contract, so that the delivery should be made at the plaintiff's farm, instead of on board the boat, to which plaintiff offered to consent, providing defendant would pay the balance due before the potatoes were removed. Defendant refused to make such payment and notified the plaintiff that he would not accept the potatoes at any time or place, at the same time demanding the return of the $20 paid on the purchase price and the value of the sacks he had furnished. Plaintiff refused to return the money so advanced on the contract or to pay for the sacks, but informed the defendant that he intended to comply with his contract by delivering the potatoes at the time and place agreed on. On the next day the defendant commenced an action in a justice's

court against the plaintiff to recover the money advanced under the contract, the value of the sacks he had furnished the plaintiff, and some other items as damages, alleging that the plaintiff had violated the terms of his contract, and had refused to comply therewith. At the same time he sued out a writ of attachment, and on the 31st of May, in company with the acting constable, went to the farm of the plaintiff, who had in the mean time sacked and prepared for delivery all the potatoes except about seventy-five sacks, and notified him that he would not take the potatoes, again demanding a return of the $20 advanced and the price of the sacks. Plaintiff refused to comply with such demand, whereupon the defendant directed the constable to seize and attach all the potatoes in the field, which was accordingly done, and they were placed in the care of a keeper. A few days later, 270 sacks of the potatoes so attached were taken to Brooks, where they were later sold, as perishable property, at 10 cents a sack; the remainder being left in the field, where they subsequently spoiled. On June 20, 1898, a nonsuit was taken, and the action dismissed.

Thereafter, on July 9, 1898, the defendant commenced another action against the plaintiff to recover damages for an alleged breach of the contract referred to. In his complaint, after setting out the contract, alleging the amount of money he had advanced and the value of the sacks furnished, he averred, in substance, that on May 27, 1898, the plaintiff herein repudiated the contract, and informed him that he would not deliver the potatoes as stipulated, or at all; that upon such refusal he demanded the return of the $20 and the value of the sacks furnished, but plaintiff refused to return the money or pay for the sacks; that the potatoes were purchased for resale, and the plaintiff was so informed at the time; that by reason of the breach of the contract defendant had been damaged in the sum of $100 as profits on such contemplated transaction, in addition to the money advanced and the value of the sacks furnished. The plaintiff as defendant in such action, for his answer, denied the breach of the contract as alleged in the complaint, and for an affirmative defense averred, in sub-

stance, that on or about the date referred to the defendant proposed to take the potatoes at the farm, to which he agreed, on condition that the balance of the purchase price should be paid before they were taken away, but that defendant wrongfully refused to make such payment, and thereupon notified plaintiff that he would not accept the potatoes, and absolutely refused to receive them; that plaintiff was then, and ever since has been, ready and willing to deliver the whole of the potatoes, and at that time and place, and at divers times thereafter and before the commencement of the action, had offered the whole of them to defendant, and demanded payment of the balance of the purchase price, but that defendant wrongfully refused to accept or pay for them. Such proceedings were thereafter had in the action that a trial in the circuit court resulted in a verdict and judgment in favor of the plaintiff for his costs and disbursements, such judgment being affirmed on appeal December 24, 1900 : *Mitchell* v. *La Follett,* 38 Or. 178 (63 Pac. 54).

On January 29th following, the present action was commenced by plaintiff against the defendant. The complaint, after setting out the terms of the contract for the sale of the potatoes, avers, in effect, that in pursuance thereof the plaintiff, prior to May 31, 1898, had sacked and put up for delivery all the potatoes mentioned therein, except about seventy-five sacks thereof, and was then, and at all times since has been, ready and willing to perform his contract and deliver the potatoes, as agreed upon, but that the defendant hindered and prevented him from so doing by wrongfully causing the potatoes to be seized under a writ of attachment issued out of the justice's court in the action brought by him against the plaintiff on the 28th of May; that under such writ J. W. Taylor, as constable, seized and held all the potatoes until they had spoiled and become unmarketable, except the 270 sacks referred to, and prays for a judgment against the defendant for $372.15 general and $78.78 special damages. The answer denies all the material allegations of the complaint, and by way of estoppel sets up the proceedings and judgment in the action brought

by defendant against plaintiff on July 9th to recover damages
for an alleged breach of contract.  A reply was filed, putting
in issue the material allegations of the answer, and denying
that the judgment referred to is a bar to this action.  At the
trial the plaintiff introduced as evidence the records in the
actions against him of May 28 and July 9, 1898, gave oral tes-
timony tending to support the allegations of his complaint, and
rested.   The defendant thereupon moved for a nonsuit, which,
being overruled, he introduced testimony in his defense, and at
the close of all the evidence requested a direction to the jury
to return a verdict in his favor.   This was likewise overruled,
and the cause submitted, resulting in a verdict and judgment
in favor of the plaintiff, from which the defendant appeals.

Affirmed.

For appellant there was a brief over the names of *Carson &
Adams* and *Edward Mendenhall,* with an oral argument by
*Mr. Loring K. Adams* and *Mr. Mendenhall.*

For respondent there was a brief and an oral argument by
*Mr. John Bayne* and *Mr. John A. Jeffrey.*

Mr. Justice Bean, after stating the facts, delivered the
opinion of the court.

The several assignments of error may all be disposed of by a
consideration of the motions for a nonsuit and for a directed
verdict.   The grounds of these motions are:  (1) That it was
not shown that Taylor, who assumed to attach the potatoes on
May 31, 1898, was an officer authorized to serve a writ of at-
tachment;  (2) that his return upon the writ is conclusive in
this action as to the number of bushels of potatoes attached;
and (3) that the judgment in the former action brought by the
defendant against the plaintiff on July 9, 1898, to recover
damages for an alleged breach of the contract, is a bar to this
action.

1. The first objection is disposed of by the fact that defend-
ant affirmatively alleges in his answer that the writ of attach-
ment referred to was placed in Taylor's hands as constable for
service, and that it was in pursuance of his direction and under

his instruction that Taylor, as such constable, levied upon and took into his possession 270 sacks of potatoes belonging to the plaintiff. It is thus affirmatively asserted that Taylor was the officer he represented himself to be, and that, in seizing the property of the plaintiff he was acting under the instruction and by the direction of the defendant. The defendant, therefore, is concluded by his answer to question the official character or authority of Taylor.

2. Moreover, it is not material whether Taylor had authority to serve the writ of attachment or not. This is an action to recover damages for breach of a contract, and not for a wrongful attachment. The averment in the complaint that the property was seized and attached at the instance and by the direction of the defendant, and the proof in support thereof, were for the purpose of excusing the plaintiff's failure to deliver the potatoes as stipulated in the contract. The allegation and proof were material in order to show either a waiver by the defendant of performance of this provision of the contract, or that by his action and conduct he had made it impossible for the plaintiff to deliver the goods as agreed upon.

3. Nor is the return of the officer, as shown by the record, conclusive between the parties as to the number of bushels attached. There are two returns in the record, from one of which it appears that the officer attached and had in his possession at Jones' warehouse at Brooks 270 sacks of potatoes, and the balance were "in the field and sacked;" and from the other that he attached 270 sacks, and had them in his possession in the warehouse at Brooks. So that, if the question of the number of bushels attached was to be determined from the officer's return, its correct solution would be difficult. But, as already suggested, the allegation and proof of the attachment are only for the purpose of excusing plaintiff's failure to comply with a condition precedent on his part. The oral proof shows, or tends to show, that the entire crop of potatoes was seized by the officer, and placed in the custody of a keeper, at the instance and by the direction of the defendant, who was present at the time. This was sufficient for the purposes of

this case, whether conforming to the facts as stated in the offi-
cer's return or not.

4. The next question has reference to the effect of the judg-
ment in the action brought by the defendant against the plain-
tiff on July 9, 1898, to recover damages for an alleged breach
of the contract set out in the complaint in the present action.
A brief reference to the pleadings in the case of *Mitchell* v. *La
Follett*, 38 Or. 178 (63 Pac. 54), is necessary to an intelligent
understanding of the question involved. The complaint, after
setting out the agreement, alleged, in substance, that on the
27th of May, 1898, La Follett repudiated the contract, and
informed Mitchell that he would not deliver the potatoes as
stipulated, or at all, and "ever since has and still does refuse to
deliver the said potatoes to the plaintiff, or any part thereof;"
that upon such refusal Mitchell demanded the return of the
$20 and payment for the sacks furnished, but La Follett re-
fused to pay the same, or any part thereof. The answer de-
nied the breach of the contract as alleged in the complaint, and
for an affirmative defense averred that on or about the 27th of
May, 1898, Mitchell proposed to take the potatoes at La Fol-
lett's farm, where they were situated, and La Follett agreed to
so deliver them, provided Mitchell would pay the balance due
before their removal, which he refused to do, and then and
there notified La Follett that he would not accept the potatoes
at any time or place, and absolutely refused to receive them, or
to pay the balance of the purchase price, although La Follett
was then, is now, and ever since has been, ready and willing to
deliver them, and at divers times thereafter and before the
commencement of the action, offered and tendered to Mitchell
the whole of the potatoes, sacks, and twine; that La Follett had
duly and fully performed and offered to perform all the con-
ditions and provisions of the contract on his part. There is no
dispute under the authorities as to the rule of law that an issue
once determined in a court of competent jurisdiction cannot be
again litigated between the same parties. But there is a dif-
ference, sometimes overlooked, between the effect of a judg-
ment as a bar or estoppel against the prosecution of a second

action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or demand. In the former case the judgment, if upon the merits, is an absolute bar, and concludes the parties and their privies, not only as to every matter that was actually litigated, but as to any other that might have been litigated. Where, however, the action, although between the same parties, is upon a different claim or demand, the judgment in the prior action operates as a bar or estoppel only as to those matters directly in issue, and not those collaterally litigated. This distinction is pointed out by Mr. Justice FIELD with his usual clearness, in *Cromwell* v. *Sac County,* 94 U. S. 351, and was applied by this court in *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442), and *Applegate* v. *Dowell,* 15 Or. 513, 522 (16 Pac. 651).

Before, therefore, the judgment in *Mitchell* v. *La Follett,* 38 Or. 178 (63 Pac. 54), can be invoked as a bar to this action, it must appear that the question now in issue was directly involved in that case and determined therein. Within the meaning of the rule relied upon, a fact or matter in issue is said to be "that upon which the plaintiff proceeds by his action and which the defendant controverts in his pleadings": *Garwood* v. *Garwood,* 29 Cal. 514; *King* v. *Chase,* 15 N. H. 9 (41 Am. Dec. 675). Now, in the former action Mitchell proceeded and based his right to recover upon an alleged breach of the contract by La Follett on the 27th of May. That was the material allegation in the complaint, which the latter controverted by his answer, and was the subject of inquiry before the court and jury. If the finding and judgment had been in favor of Mitchell, La Follett would be estopped from alleging in this action anything to the contrary; but, as the action resulted in a final judgment in favor of La Follett, it constituted an adjudication that there had been no breach of the contract on his part, but did not determine that Mitchell himself had not violated the terms and conditions thereof. That question was not involved in the former controversy, and the judgment therein is no bar to this action. The plaintiff was not obliged to set up in the former action a breach of the contract by the defendant,

for the purpose of recovering damages therefor: Freeman, Judgm. (3 ed.), §§ 227, 228. And, as said by Mr. Justice FIELD in *Cromwell* v. *Sac County,* 94 U. S. 351, "It is not believed that there are any cases going to the extent that, because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause because it might have been determined in the first action." So we conclude that the judgment in the former action between the same parties to this record is in no way a bar to this, because the point now in controversy was neither involved nor litigated there.

5. It is insisted, however, that the position assumed by the plaintiff in the present case is inconsistent with his answer in the former one, because it was there alleged that he had offered to deliver the whole of the potatoes to the defendant, and was able and willing to perform the contract on his part. That action, however, was grounded on the repudiation of the contract by the plaintiff before the time for delivery had arrived. That was the gist of the controversy, and the only question really litigated and settled by the judgment. The mere inconsistency, if there is any, between some of the allegations of plaintiff's answer in the case referred to and the position he now assumes, does not estop him from maintaining this action, because the defendant has not been misled or injured thereby, and therefore has no cause of complaint on that ground. The evidence does tend to show that the plaintiff was ready and willing at all times to comply with the terms of his contract and deliver the potatoes as agreed upon, and so notified the defendant in writing, but that he was prevented from doing so by the wrongful acts of the defendant. It is therefore doubtful whether the allegations of his answer in the former action are in any substantial sense inconsistent with the position now

assumed by him. But, whether they are or not, they afford no reason why the judgment therein should be considered as an estoppel or conclusive bar to this case.

It follows from these views that the judgment of the court below should be affirmed, and it is so ordered.	AFFIRMED.