Argued at Pendleton May 1, reversed June 27, rehearing denied October 10, 1922.

## RUNNELLS *v.* LEFFEL ET AL.

(207 Pac. 867.)

**Courts—Decision of Supreme Court, Stare Decisis upon Questions Involved Though Court Divided.**

1. The deliberate decision of the Supreme Court, although pronounced by a divided court, must be considered as *stare decisis* upon the questions involved.

**Judgment—Where Former Judgment Barred Action, the Allegations in Second Action That Partner was Conspirator and Falsifier Did not Remove Bar.**

2. Where a sale of realty was made, and the agents were to receive a commission when notes given by the purchaser were paid in cash to the vendor, in an action by one agent against his partner for his share of commissions alleged to have been collected by the partner, a decree finding that the agent had failed to prove that the notes had been paid in cash and that there was no sum owing the agent from his partner was a bar to a subsequent action between the parties, and an averment that his former partner was a conspirator and falsifier did not remove the bar of the former judgment.

From Union: J. W. KNOWLES, Judge.

In Banc.

This is an appeal from the judgment rendered in an action at law prosecuted by A. M. Runnells against

---

1. Doctrine of *stare decisis* as applicable to decision by divided court, see note in 16 Ann. Cas. 113.

Limitations upon the doctrine of *stare decisis,* see notes in 27 Am. Dec. 628; 73 Am. St. Rep. 98.

W. E. Leffel and G. B. Mays, as defendants, wherein
the plaintiff recovered judgment for $2,950 against
the defendant Leffel. The action grew out of the
partnership business of W. E. Leffel and A. M. Run-
nells as real estate agents. During the life of the
partnership, a contract was made and entered into
by and between the plaintiff herein and defendant
Leffel as partners, and the defendant G. B. Mays, for
the sale of lands and farm machinery belonging to
him, for the sum of $38,000, the partners to receive as
commission any sum in excess thereof. The firm of
Leffel and Runnells sold the lands, consisting of 2,400
acres, to one G. P. Higinbotham, for $45,000, and in
consideration of certain expenses incurred by Mays, it
was then agreed between Mays and the agents that
they should receive as commission the sum of $5,900.

The sale was made in 1915. On November 1, 1915,
Higinbotham paid $3,000 on the purchase price of the
lands. On November 24th, $400 of the commission
was paid to the partners, which they divided equally.
On December 11, 1915, Higinbotham made and de-
livered to Mays, as part of the consideration for the
purchase of these lands, three notes, aggregating the
sum of $20,000, bearing interest at the rate of 8 per
cent per annum, and due November 1, 1916, November
1, 1917, and January 1, 1918, respectively. These
notes were delivered to one J. E. Lenhart as escrow-
holder. Thereafter, Ben F. Evans was substituted
for Lenhart as escrow-holder of the notes, which were
later delivered by Evans to Volney Lee.

It is averred that upon the collection of these notes,
the partners were to be paid $5,500 of the principal,
and Mays, the owner, $14,500 thereof.

On the date of the execution of the three notes
above referred to, Higinbotham executed other notes

aggregating the sum of $16,000, as a part of the purchase price. These notes were delivered to Mays.

On March 1, 1916, Higinbotham paid an additional $6,000 on the purchase price.

The amended complaint avers, among other things, that on July 7, 1917, it was agreed between Higinbotham and Maggie Higinbotham, his wife, and Leffel, and afterwards consented to by Mays, that Maggie Higinbotham should loan to her husband, or pay for him to Mays, the sum of $39,000 as full payment of all the notes, principal and interest, and that the land should be conveyed to Maggie Higinbotham, she to hold the same as security for the sums of money to be paid by her for Higinbotham. It was further agreed between Leffel, Mays, G. P. Higinbotham and Maggie Higinbotham, that the money advanced by her for her husband should be repaid by him to her, and that upon such repayment she was to convey the land to him.

On July 7, 1917, the interest accrued on the balance of the commission of $5,500 was computed and a part of it deducted, and it was then agreed between Leffel and Mays that upon payment by Maggie Higinbotham the sum of $5,900 should be paid by Mays as the balance of the commission on account of the sale of the land.

On August 6, 1917, and pursuant to the agreement of July 7, 1917, Maggie Higinbotham paid Mays $17,000, whereupon Mays and wife conveyed the land to her and she and her husband made, executed and delivered to Mays and wife a note for $22,000, securing payment of the same by a mortgage on the land. The payment of $17,000, together with the note and mortgage of $22,000, constituted payment of the notes executed and delivered by Higinbotham to Mays, and

the deed so executed and delivered to Maggie Higin-
botham was executed and delivered to her as a mort-
gage in order that she might hold the land as security
for the sums of money advanced and paid by her for
Higinbotham.

On August 6, 1917, Mays paid Leffel the sum of
$4,400 and on that date Leffel pretended to loan to
Maggie Higinbotham $1,500. In consideration thereof,
she and G. P. Higinbotham made and delivered to
Leffel a note for $1,500, which was afterwards paid.
This $4,400 and note of $1,500 were paid and made
as full payment of the balance of commission owing
by Mays to the partners on account of the sale of the
land to Higinbotham.

The amended complaint further avers that by rea-
son of the completion of the sale of the land to Higin-
botham, plaintiff was entitled to have and receive one
half of the sum of $5,900, with interest from August
6, 1917; that at the time of the making of the sale
of the land to Higinbotham, it was agreed between
Mays, Leffel, Higinbotham and plaintiff that a loan
should be secured on the land by Higinbotham, in
order that he might complete the payment of the pur-
chase price, and that plaintiff and Leffel should assist
him in securing such loan in order that the partners
might secure and receive the balance of their commis-
sion as real estate agents; that on June 30, 1917, it
was agreed between plaintiff, Leffel and one F. H.
Gaulke that Leffel and Gaulke should go upon the
lands for the purpose of examining the same, and if
the land was found to be sufficient security, Gaulke
would make a loan of $25,000 to Higinbotham in order
that he might complete payment for the land.

The plaintiff further averred a conspiracy between
Leffel and Mays, to cheat and defraud plaintiff of the

sum of money that would be owing him upon payment
of the notes herein referred to; that pursuant to the
conspiracy and with the design of cheating and de-
frauding plaintiff and preventing Gaulke from making
the loan, Leffel, without plaintiff's knowledge or con-
sent, failed and refused to take Gaulke to see the
land and advised him that they would not examine
it; that without the knowledge or consent of plaintiff,
and in pursuance of the conspiracy, and with the de-
sign of defrauding the plaintiff, Leffel and Mays
caused the escrow-holder to surrender and deliver to
them the notes in his possession; that in July or Au-
gust, 1917, pursuant to the conspiracy, and with the
design and purpose of cheating and defrauding the
plaintiff, Leffel and Mays agreed that they, and each
of them, should make it appear, and they did make it
appear, that the notes were surrendered and delivered
to Mays on July 7, 1917, and that on that date the
contract between Mays and Higinbotham was surren-
dered and delivered to Mays, and that thereupon Hig-
inbotham turned the land back to Mays and thereby
lost his interest in the contract and in the land, and
that after the surrender of the notes and contract the
land was sold to Maggie Higinbotham by virtue of a
new contract of sale with her; that, in truth, Higin-
botham did not surrender the contract or receive the
notes on July 7, 1917, and the notes were not surren-
dered nor delivered to Higinbotham until August 6,
1917, the date of execution and delivery of the deed to
Maggie Higinbotham, and a new contract of sale of
the land to Maggie Higinbotham was not made on
July 7, 1917; that on August 6, 1917, or at some later
date to plaintiff unknown, Mays prepared and Leffel
signed a receipt purporting to show that the land had
been sold to Maggie Higinbotham and that a commis-

sion in the sum of $5,900 had been paid by Mays to
Leffel on account of such sale. But defendants knew
that the land had been sold to G. P. Higinbotham, and
that Maggie Higinbotham had loaned to him money for
payment of the notes and had taken a deed as secur-
ity therefor, and the receipt was made and signed only
for the purpose of making it appear that the land had
been sold to Maggie Higinbotham, and not to G. P.
Higinbotham.

On August 6, 1917, Maggie Higinbotham, in the
presence of Leffel and Mays, asked that a contract
be made for the purpose of showing that Higinbotham
was indebted to her for the money advanced by her
for him, but defendant Leffel advised her that she
should not have such contract and did not need it.
This advice was given by Leffel in order that there
might not be any written contract showing the loan,
and in pursuance of the conspiracy and with the pur-
pose and intention of defrauding plaintiff.

The complaint further avers that Alice Leffel and
defendant W. E. Leffel are husband and wife, and
that on August 6, 1917, the $4,400 paid by Mays to
Leffel was deposited to the credit of Alice Leffel in
order to prevent the plaintiff from securing the same,
or any part thereof, and in furtherance of the conspir-
acy and for the purpose of defrauding plaintiff.

Plaintiff brought suit on the thirty-first day of Au-
gust, 1917, in the Circuit Court of the State of Oregon
for Wallowa County, in which W. E. Leffel and his
wife, Alice Leffel, the First Bank of Joseph, and the
First National Bank of Joseph were defendants. The
judgment-roll in that suit is Plaintiff's Exhibit "A"
herein.

The complaint further avers:

"That said suit was brought by this plaintiff
against the defendants in said suit for the purpose

of securing an accounting between plaintiff and said defendant Leffel on account of the sale of said lands to G. P. Higinbotham, and for the purpose of preventing the defendant Alice Leffel and the said defendant, First Bank of Joseph, and said defendant First National Bank of Joseph, from disposing of the money, or any part thereof, until such accounting should be had and the amount owing from said defendant Leffel to plaintiff determined, and for the purpose of securing a decree of the said Circuit Court of Wallowa County, Oregon, requiring the money received as commission on the sale of said lands and deposited to the credit of said Alice Leffel with said banks to be applied in satisfaction of such decree as might be obtained by plaintiff in said suit.

"That in the amended complaint filed in said suit it is alleged that said defendant, W. E. Leffel, and Alice Leffel are husband and wife; that each of said banks is a corporation; that said partnership existed from some time in the year 1915 until some time in the year 1916 * * ; and in said amended complaint it is alleged that it was agreed between said Mays and said partners that they should have a commission of $5,900 for the sale of said lands; that $400 of said commission was paid on or about November 24, 1915. * * .

"And it is alleged in said amended complaint that in 1917 the said lands were conveyed to said Maggie Higinbotham under and by virtue of the terms and conditions of the contract between said Mays and the said partners, and under and by virtue of the terms and conditions of said contract between said Mays and said G. P. Higinbotham. And that upon such conveyance being made, the balance of the purchase price was paid after the deduction of a part of the interest accrued thereon, and that said defendant Mays paid to defendant Leffel a certain sum of money as the balance of said commission; but that plaintiff does not know what amount of money was paid by Mays to the said Leffel * * ; and that said money was deposited to the credit of Alice Leffel with said banks for the purpose * * of defrauding plaintiff * *.

"That answers and replies were filed in said suit and issues formed therein, and said suit came on for trial and taking of evidence therein in said circuit court for Wallowa County; and, upon the trial of said suit, the same was dismissed, with judgment to the defendants * * ."

The complaint in this action avers that upon the trial of that suit defendant Mays herein falsely testified that the notes were surrendered and delivered to G. P. Higinbotham on the seventh day of July, 1917, and the contract between Mays and Higinbotham surrendered and delivered to Mays on that date; that the land was turned back by Higinbotham to Mays, and that Higinbotham thereby lost his interest in and to the contract and to the lands, and that thereafter the land was sold to Maggie Higinbotham by virtue of a new contract of sale with her; that Mays' testimony was knowingly false; that the contract was not surrendered and that Higinbotham did not receive the notes on that date, nor were they surrendered to him until August 6, 1917.

The complaint further avers that defendant Leffel knowingly testified falsely that the notes were surrendered and delivered to Higinbotham on July 7, 1917, and that the contract between defendant Mays and Higinbotham was surrendered and delivered to Mays on that date; that thereafter the land was turned back to Mays and that Higinbotham lost all interest in his contract and in and to the land, and that thereafter the land was sold to Maggie Higinbotham under a new contract; that at the time of giving the false testimony in the trial of that suit, Leffel well knew that Maggie Higinbotham did not at any time purchase the land, or any part thereof; that such false testimony was given pursuant to and in further-

105 Or.—23

ance of a conspiracy and agreement for the purpose and with the intention of defrauding plaintiff by preventing him from securing or receiving any part of the commission for the sale of the lands to Higinbotham. Plaintiff demanded judgment against the defendants for the sum of $2,950.

On June 21, 1920, defendant Leffel filed his motion to strike the amended complaint, which was denied by order of the court on September 24, 1920. Thereafter, Leffel demurred to plaintiff's amended complaint, alleging that it appeared upon the face thereof, (1) that the court had no jurisdiction; (2) that several causes of action had been improperly united; conspiracy, an alleged action on the case for damages, action for perjury in judicial proceedings, action for subornation of perjury; (3) the defect of parties defendant; (4) failure of complaint to state cause of action.

On December 7, 1920, the court entered its order overruling the demurrer, and defendant Leffel answered, admitting the allegations of paragraphs 1 and 2 of the amended complaint, and denying paragraphs 3 to 49, inclusive, thereof.

For a first further and separate answer and defense, defendant averred, among other things, that on or about November 29, 1915, defendant Mays and wife contracted with Higinbotham to sell to him the land described in the amended complaint, for the sum of $45,000, the purchase price to be paid as follows:

$ 3,000 upon the execution of the contract;
$ 6,000 on or before March 1, 1916;
$ 5,000 on or before November 1, 1916;
$ 5,000 on or before November 1, 1917;
$10,000 on or before January 1, 1919;
$10,000 on or before January 1, 1920; and
$ 6,000 on or before January 1, 1921;

payments to be secured by notes bearing date November 1, 1915, with interest at 8 per cent per annum; that on or about the eleventh day of December, 1915, Mays contracted with Runnells and Leffel for the payment of the commission of $6,000 for the sale of the land to Higinbotham, the agreement providing for the discharge of the commission due the real estate agents upon the payment by Higinbotham of certain notes described therein, and further providing that in case Higinbotham failed to make the payments set forth in the contract of sale of the land, or in case Mays should be compelled to take the ranch back in lieu of payment of the notes made by Higinbotham to him, then the interest of Leffel and Runnells in the notes would cease; that the notes of Higinbotham are the notes described in paragraphs 8 to 13 of plaintiff's complaint; that they were never paid in cash, or otherwise, by Higinbotham, or at all; that the partnership between Leffel and Runnells terminated in December, 1916, Leffel continuing in the business; that on or about July 7, 1917, Higinbotham being in default in the payment of his obligations, refused and neglected to pay the amount stipulated in the contract of sale and represented by the notes, and, on demand of Mays, returned to him the contract of sale, and thereupon such notes were returned to Higinbotham; that thereafter, and on the seventh day of July, 1917, defendant sold the real estate described in plaintiff's amended complaint to Maggie Higinbotham for $39,000, and on that date Mays agreed to pay the defendant his commission for the sale of the land, which amounted to $5,900; that the sale of the land to Maggie Higinbotham was a *bona fide* transaction; that the notes placed in the hands of the escrow-holder were taken from him on July 7th for the pur-

pose of returning them to Higinbotham upon the surrender of his agreement.

For a second further and separate answer and defense, Leffel alleged the beginning of a suit wherein "the plaintiff herein was plaintiff, and W. E. Leffel, the defendant herein, was defendant, together with Alice Leffel, First National Bank of Joseph, Oregon, and First Bank of Joseph, Oregon, and that in said suit the plaintiff sued to recover and collect from the defendant W. E. Leffel $2,950, being the same and identical claim and money demand of said defendant that is sued upon in this action"; that in that suit Runnells, the plaintiff herein, sued upon the contract set forth in his amended complaint in this action; "that the issues presented by said suit were the same issues as those presented by the present action, and that the subject matter and claim of said suit was the same subject matter and claim as that presented by the within case, and that all the questions herein sought to be litigated by the plaintiff were questions and claims which either were or could have been litigated in said suit." The defendant avers that plaintiff is estopped and barred from prosecuting this action, and refers to the pleadings and decree entered in the former suit, copies of which are attached to the answer as exhibits.

A demurrer to the defense of former judgment was filed by the plaintiff and sustained by the court. Plaintiff filed his reply. At the conclusion of plaintiff's case, Leffel moved the court for a nonsuit, which was denied. A verdict for $2,950 was returned against the defendant.

Defendant appeals from judgment in favor of the plaintiff, assigning as error various rulings of the court involving the question of *res judicata,* the ad-

mission of certain testimony, and the giving and re-
fusing of certain instructions.

REVERSED.    REHEARING DENIED.

For appellant there was a brief over the name of
*Messrs. Cochran & Eberhard,* with oral arguments by
*Mr. A. W. Schaupp* and *Mr. Colon R. Eberhard.*

For respondent there was a brief and oral argu-
ment by *Mr. A. S. Cooley.*

BROWN, J.—1, 2. This is the second judicial pro-
ceeding between Runnells, plaintiff, and Leffel, de-
fendant, arising out of the retention by Leffel of the
commission received for the sale of real estate.    For
the decision in prior case, see *Runnells* v. *Leffel,* 93
Or. 342 (176 Pac. 802, 183 Pac. 756).    In the former
case, it was decided by the lower court, and affirmed
by this court, that no sum of money was due to Run-
nells from Leffel on account of their real estate
transactions.    The deliberate decision of this court,
although pronounced by a divided court, must be con-
sidered as *stare decisis* upon the questions involved:
15 C. J. 938.    This court adjudged, after having
"duly examined the allegations of the parties and the
testimony produced and the decree of the court be-
low" in that cause, "that said decree correctly ad-
judicates the rights of the parties."    The decree
affirmed reads, in part:

"The court finds that the plaintiff has failed to es-
tablish by competent testimony the allegations of the
amended complaint and reply, and that the plaintiff
has failed to prove by a preponderance of the evi-
dence, or at all, that the three notes mentioned in the
amended complaint of plaintiff made, executed and
delivered by G. P. Higinbotham to C. B. Mays were
ever paid in cash or otherwise by G. P. Higinbotham,

or any other person, or at all; *and the court further finds that there is no sum or sums of money due or owing from the defendant W. E. Leffel and Alice Leffel, or either of them, to the plaintiff.*"

It will be remembered that the partnership was to receive its commission upon the payment of the three notes mentioned in the above excerpt.

The prevailing opinion says, at pages 348 and 349, 93 Or.:

"We have read all of the evidence carefully but fail to find such contention supported. The evidence shows that the original contract between C. B. Mays and G. P. Higinbotham was canceled and the notes surrendered and that a new contract was made with Maggie Higinbotham and consummated. \* \* The evidence of the plaintiff clearly shows that these notes were not paid, and that no proceeds were received under the terms of said contract."

If there is any obscurity in the decree, this expression from the opinion clarifies it: *Taylor* v. *Taylor*, 54 Or. 560 (103 Pac. 524).

An analysis of the complaint in the second action discloses that plaintiff's right of action is based upon the assertion that $5,900 was received by Leffel as commission due the partnership by reason of the sale of the Mays real property to Higinbotham, and that Leffel designedly and wrongfully defrauded plaintiff out of his one-half interest therein, to his damage in the sum of $2,950.

The principal question for us to determine is this: Is the plaintiff barred by the former adjudication?

Discussing two main rules which govern the subject of estoppel by judgments, Mr. Black, in his work on Judgments, at Section 504, says:

"The first of these chief rules is as follows: A point which was actually and directly in issue in a former

suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, cannot be again drawn in question in any future action between the same parties or their privies, whether the causes of action in the two suits be identical or different. * * The second of the main rules on the subject may be thus stated: A judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit between the same parties or their privies, upon the same cause of action, so long as it remains unreversed.''

These rules are supported by many decisions of this and other courts.

In the recent case of *United Shoe Machinery Corp.* v. *United States,* 257 U. S. —— (66 L. Ed. ——, 42 Sup. Ct. Rep. 363, 365, 366), Mr. Justice DAY, in delivering the opinion of the court, said, of a decision that has frequently been cited and followed by this court:

''Perhaps the leading case in this court upon the subject of estoppel by former judgment is *Cromwell* v. *County of Sac,* 94 U. S. 351, 352 (24 L. Ed. 195), in which this court, speaking by Mr. Justice FIELD, laid down the general rule of law, which has been followed in subsequent cases: '* * There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action, * * concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * But where the second action between the same parties is upon a different claim or demand, the judgment in the

prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined.' "

After quoting the above, the learned justice then says:

"In other words, to determine the effect of a former judgment pleaded as an estoppel, two questions must be answered: (1) Was the former judgment rendered on the same cause of action? (2) If not, was some matter litigated in the former suit determinative of a matter in controversy in the second suit? To answer these questions, we must look to the pleadings making the issues, and examine the record to determine the questions essential to the decision of the former controversy."

The doctrine thus announced runs through the opinions of many cases decided by this court.

*Cromwell* v. *County of Sac, supra,* was an action on four bonds of the county of Sac, Iowa, for $1,000 each, and four interest coupons for $100 each. To defeat that action, the defendant relied upon the estoppel of a judgment rendered in favor of the county in a prior action brought by one Smith upon certain earlier maturing coupons on the same bonds. Proof was also offered that Cromwell was the owner of the coupons in the prior action, and that it was prosecuted for his benefit.

In the case of *Caseday* v. *Lindstrom,* 44 Or. 309 (75 Pac. 222), this court affirms the general rule that a judgment or decree rendered upon a different claim or

demand than the one being presently litigated oper-
ates as an estoppel against matters actually litigated
or facts distinctly in issue, and cites in support
thereof *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442);
*Applegate* v. *Dowell,* 15 Or. 513 (16 Pac. 651); *White*
v. *Ladd,* 41 Or. 324 (68 Pac. 739, 93 Am. St. Rep.
732); *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916,
95 Am. St. Rep. 780). The opinion of the court
quotes the following:

"The rule is that the judgment of a court of com-
petent jurisdiction is not only conclusive on all ques-
tions actually and formally litigated, but as to all
questions within the issue, whether formally litigated
or not." *Barrett* v. *Failing,* 8 Or. 152, 156.

Also, "A fact or matter at issue is that upon which
the plaintiff proceeds by his action, and which the de-
fendant controverts in his pleadings." *Garwood* v.
*Garwood,* 29 Cal. 514.

The court further said:

"This is the utterance, also, of the court in *King* v.
*Chase,* 15 N. H. 9 (41 Am. Dec. 675). 'It may be
stated generally that the ultimate facts upon which
the recovery is had—facts which, if found the other
way, the recovery must have been different—are facts
in issue': *Marshall* v. *Shafter,* 32 Cal. 176, 193."

In the case of *Ruckman* v. *Union Ry. Co.,* 45 Or.
578 (78 Pac. 748, 69 L. R. A. 480), the court states
the general rule in this state to the effect that a de-
cree rendered upon the merits is a final and conclusive
determination of the rights of the parties and a bar
to future litigation upon the same cause not only as
to matters actually decided, but as to every other
matter which the party might have litigated and had
decided as an incident thereto, or essentially con-
nected therewith, and quotes largely from an opinion
in *Patterson* v. *Wold* (C. C.), 35 Fed. 791, as follows:

"The court (Mr. Justice Brewer presiding) held that the first judgment was a bar to the second, although the grounds of recovery were different. After quoting Mr. Pomeroy's analysis of the elements which constitute 'a cause of action' (Pomeroy, Rem. & Rights, § 519), he says: 'Now, what is the plaintiff's primary right, as alleged in these cases? Obviously, in each the same—the right to have the land; and the defendant's corresponding primary duty is to let him have the land; and the defendant's delict or wrongful act is the failure to let him have the land. These exist in each case, and in each case alike. It is true, the basis of complainant's primary right is, as alleged, different in one case from that in the other; but this is mere difference, in the language of the Supreme Court, in "the ground of recovery." The mere fact that different testimony would be necessary to sustain the different allegations in the two bills does not of itself necessarily make two distinct causes of action. Take this illustration: Suppose a party bring suit to recover possession of real estate, and alleges in his complaint that he is the owner by virtue of a patent from the government. After a judgment against him, would he be permitted to maintain a second action, alleging that he was the owner by virtue of certain tax proceedings or by virtue of a judicial sale? Yet different testimony would be required to sustain his allegations in the two actions. In both of such actions plaintiff's primary right— that of possession based on ownership—would be the same, the only difference being in the ground of recovery. All the grounds of recovery, all the bases of plaintiff's title, must be present in the first action, or they are lost to him forever, exactly the same as when a party sued upon a note, and having several defenses, pleads only one—the balance are as though they never existed. The party who has his day in court must make his entire showing. He cannot support a claim or defense in different actions on different grounds.' "

The court then quotes an opinion written by Mr. Justice Holmes, in *United States* v. *California Land Co.*, 192 U. S. 355 (48 L. Ed. 476, 24 Sup. Ct. Rep. 266, see, also, Rose's U. S. Notes):

" * * But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim; * * and *a fortiori* he cannot divide the grounds of recovery."

In the case of *White* v. *Ladd, supra,* Mr. Justice Wolverton, speaking for the court, said:

"The potency of a judgment as an estoppel concludes every fact necessary to uphold it, and extends, not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject matter of the litigation."

In *Peacock* v. *Kirkland,* 74 Or. 279, 284, 285 (145 Pac. 281), Mr. Justice Burnett wrote:

"In the replevin action here involved there was an opportunity offered by Sections 153 and 198, L. O. L., to settle the status of the property and the amount of damages to be assessed against the plaintiff there if such was the right adjudication of the issue. The judgment there is conclusive of the rights of the parties on the merits of the action, and while that decision stands we cannot go behind it and determine questions that should have been litigated in that action."

In *United States Nat. Bank* v. *Shehan,* 98 Or. 155, 161 (193 Pac. 658), the court, speaking through Mr. Justice McBride, said:

"We have referred to the opinion in the case because no findings were specifically made beyond the general one that 'the equities are with the defendants,' and in such cases the court may have recourse to the opinion to show what actually was decided:

*Gentry* v. *Pacific Livestock Co.,* 45 Or. 233 (77 Pac. 115). But beyond this we take it that the rule is firmly established that a fact properly in issue between parties, necessary to the determination of the case, will be finally concluded from re-examination in any subsequent suit or action between the same parties: Freeman on Judgments (4 ed.), § 249, p. 441 et seq., and authorities there cited: *Underwood* v. *French,* 6 Or. 67 (25 Am. Rep. 500); *Barrett* v. *Failing,* 8 Or. 152; *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *Applegate* v. *Dowell,* 15 Or. 513 (16 Pac. 651); *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916, 95 Am. St. Rep. 780); *Caseday* v. *Lindstrom,* 44 Or. 309, 315 (75 Pac. 222); *Wales* v. *Lyon,* 2 Mich. 276; *King* v. *Chase,* 15 N. H. 9 (41 Am. Dec. 675). Nor is the form in which the subsequent action is prosecuted material. It would be intolerable if a party, having chosen his forum, and presented an issue for trial, should be permitted after defeat, by simply changing the form of his action, to relitigate the same matter in a new form of action: *Simpson* v. *Hart,* 1 Johns. Ch. (N. Y.) 91; *Putnam* v. *Clark,* 34 N. J. Eq. 532; *Phillips* v. *Pullen,* 45 N. J. Eq. 830 (18 Atl. 849).''

In the former case between these parties, the decree speaks for itself. In plain words, it adjudged that Leffel owed Runnells nothing. That judgment cuts the ground from under the plaintiff's feet. If we were uncertain as to the meaning of the decree in that case, the language of the prevailing and dissenting opinions would take away all doubt. The plaintiff has had his day in court. He chose his remedy and his forum. Plaintiff's averment that his former partner is a conspirator and a falsifier does not remove the bar of a former judgment. The defendant's plea in law was good.

This case is reversed.

REVERSED.    REHEARING DENIED.