## GUNDERSON BROS. ENGINEERING CORP.
### *v.* DEPARTMENT OF REVENUE

Morris J. Galen, Tonkon, Galen & Baker, Portland, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 21, 1973.

CARLISLE B. ROBERTS, Judge.

This is an appeal from four orders of the Department of Revenue, No. VL 71-372, No. VL 71-398, No.

VL 71-399, and No. VL 71-452, covering the four property tax years 1967-1968 to 1970-1971, inclusive. These orders denied the plaintiff's application for personal property tax relief under ORS 307.810 et seq. (the "free port statute"). ORS 307.810 reads, in part, as follows:

"(1) Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall not be deprived of exemption because while *in the warehouse* the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990." (Emphasis supplied.)

The testimony presented by the parties leads the court to conclude that the plaintiff is engaged in the manufacture of railroad cars pursuant to specific orders therefor. It necessarily purchases materials and supplies needed in this activity. Among these are the wheels, axles, bolsters, and springs which, upon being assembled, make up the four-wheel trucks placed at the ends of each car. These components come in a variety of weights and sizes and are purchased to meet the particular specifications for each type of railroad car being manufactured at a given time. They are so designed that, with the use of hydraulic or pneumatic presses, the wheels and roller bearings can be pushed into position on the axles, the side frames can be

pressed over the bearing housings, springs and truck bolsters inserted, and the railroad car body pivoted on the pin which tops each bolster. The weight of the body aids in maintaining the truck assembly as a unit, without additional fastenings (although the testimony indicated that bolts were sometimes used in particular jobs).

The trucks are readily "assembled, bound and joined," because each element is standard and replaceable in its own class. The parts are purchased out of state and brought into Oregon with intention that they be sold (after assembly) "in the ordinary course" for out-of-state delivery (as a part of a railroad car). The plaintiff contends only that the trucks should be deemed exempt personal property under ORS 307.810 et seq. (the bookkeeping requirements of which have been carefully followed).

However, no evidence was presented to show that the plaintiff was engaged in the business of warehousing or that it had warehouses. The exhibits showed only assembly lines in a manufacturing plant. Some incidental storage area can be presumed.

The case clearly comes within the holding of *Freightliner Corp. v. Dept. of Rev.*, 258 Or 478, 483 P2d 1307 (1971), where, under similar facts, the court quoted from a former *Gunderson* decision (discussed below): " '* * * The statute was not intended to provide an exemption for goods shipped into Oregon for the purpose of manufacturing them into a finished product in Oregon. * * *' 256 Or at 105." The court then added: "That is the correct interpretation of the Free Port Act." (258 Or at 481). See also *Hyster Company v. Dept. of Rev.*, 4 OTR 351 (1971).

This would appear to conclude the matter. How-

ever, the parties have agreed that a second issue must be settled; i.e., are the findings and decisions of this court for the tax year 1966-1967, in *Gunderson Bros. Eng. v. Tax Comm.*, 3 OTR 315 (1968), *aff'd*, 256 Or 98, 471 P2d 802 (1970), binding upon the parties and the court in this case, for subsequent tax years, in accordance with the doctrine of collateral estoppel?

The above-mentioned Tax Court case for the 1966-1967 tax year was based on an appeal from the defendant's Order No. VL 68-77. On the appeal to the Oregon Tax Court, in a trial de novo, the complaint in the above-mentioned case alleged that personal property, consisting of wheels, axles and other items, destined for sale in the ordinary course of trade or business, manufactured outside the state and brought into the state for transshipment to an out-of-state destination, were held in private storage in the state, awaiting further shipment, and were designated as being "in transit" upon the books and records of the warehouse wherein the property was located. The complaint further alleged that the necessary personal property forms were filed with the Assessor of Multnomah County and the proper claim for "no situs" property, justifying the exempt status, was duly filed, but the claim for exemption was denied and the denial affirmed by the order of the State Tax Commission above referred to. Answer having been made by the defendant, a stipulation of facts was signed by the attorneys for plaintiff and defendant. Among the matters agreed upon, on behalf of the parties, requiring no proof, were:

"IV

"At all times material herein, the Subject Property was held in private storage in segregated lots,

was designated as being 'in transit' upon the books and records of the warehouse wherein the same was located, and, while being so held, was assembled, bound and joined to railroad car frames manufactured by plaintiff and destined for sale in the ordinary course of trade or business.

"* * * * *

"VI

"The Subject Property was not changed in form or in shape by plaintiff in the process of assembling, binding and joining the same to the railroad car frames. For example, the physical characteristics of the wheels and axles remained the same after they were assembled, bound and joined as aforesaid."

The Tax Court in *Gunderson Bros. v. Commission,* 3 OTR 315 (1968), found for the plaintiff, stating at 318:

"The stipulation and the evidence show that the plaintiff has met all the qualifications set forth in the free port statute. The parts are manufactured outside of Oregon, purchased outside of Oregon, brought into the state by the plaintiff for out-of-state shipment, are destined for sale in plaintiff's ordinary trade or business and, while held in a private warehouse awaiting shipment, are assembled, bound and joined together. The stipulation also states that the wheels, axles and bolsters are not changed in form or shape by the process of assembling, binding and joining the same to the railroad car frame."

Upon appeal to the Supreme Court, in *Gunderson Bros. Eng. v. Tax Comm.,* 256 Or 98 (1970), the court (with some difficulty, because of questions raised relating to the stipulation) found for the plaintiff, "* * * making the stipulation the basis for our affirmance * * *." The court, following the usual rule that stipulations of fact are binding upon the parties and

the court, pointed out its reason for maintaining the stipulation in this instance, at 102:

> "* * * Upon reargument, counsel for the taxpayer stated without contradiction, that after the stipulation was entered into, which was after the Commission hearing but before the tax court hearing, he relied upon the stipulation as evidencing an abandonment by the Commission of its previous position that the assembly of the component parts of the trucks was manufacturing."

The stipulation was a necessary fact to the holding in the above-mentioned *Gunderson* cases, 3 OTR 315 (1968) and 256 Or 98 (1970).

The instant case presents a different state of facts in this respect. No stipulation was entered into which would suggest that plaintiff's activities, for which exemption was sought, were linked with warehousing rather than manufacturing.

█ The doctrine of collateral estoppel is well-established in Oregon. The judgment of a court may act as a bar or estoppel against the prosecution of a second action upon the same claim or demand and it may effect an estoppel in another action between the same parties. It is important to distinguish between these two categories.

> "* * * Judge Field in *Cromwell v. County of Sacramento*, 94 U. S. 351, has pointed out the distinctions referred to, with his accustomed clearness and accuracy. It amounts simply to this, that if the second action is upon the same claim, the former judgment, if upon the merits, will constitute a complete bar, not only as to every matter that was brought into defeat the claim in the former action, but as to every other matter that would have been admissible for that purpose. If, however, the second action is upon a different claim, the former

judgment will only operate as an estoppel against the matters actually litigated therein. In that case it concludes only those facts that were directly in issue in that action. The inquiry in the latter case, Judge Field says, 'must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined; only upon such matters is the judgment conclusive in another action.' * * *" (*Applegate v. Dowell,* 15 Or 513, 524, 16 P 651 (1887).)

The distinction is again emphasized in *La Follett v. Mitchell,* 42 Or 465, 472, 69 P 916 (1902):

"Before therefore, the judgment in *Mitchell v. La Follett,* 38 Or. 178 (63 Pac. 54), can be invoked as a bar to this action, it must appear that the question now in issue was directly involved in that case and determined therein. Within the meaning of the rule relied upon, a fact or matter in issue is said to be 'that upon which the plaintiff proceeds by his action and which the defendant controverts in his pleadings': [citations]. * * *"

The estoppel extends not only as to every matter that was actually litigated, but as to any other that might have been litigated *unless* the second action is on a *different* claim. *Western Baptist Mission v. Griggs,* 248 Or 204, 433 P2d 252 (1967); *First Nat. Bank of Burns v. Buckland,* 130 Or 364, 280 P 331 (1929).

It is clear that the present suit is based upon a different claim from the first *Gunderson* suit, *supra.* ORS 307.830 provides that any person seeking exemption from taxation of personal property under the free port statute must file a claim on or before April 1 of each year, showing the specific, segregated property which is to be considered for exemption. The legislature, in enacting this provision, recognized that

the factual situation which supports a claim for exemption may be changed at any time. The recognition of this simple fact gives rise to the rule that, in ad valorem taxation, each tax year stands on its own. *Mittleman v. Commission,* 2 OTR 105 (1965). The cause of action in the present case arose upon denial of applications for tax years other than that considered in the first *Gunderson* case.

It follows that the rule of collateral estoppel applicable in this suit is that which applies when a second action is brought upon a different claim; i.e., the former judgment will operate as an estoppel only against the matters actually litigated therein. As was stated above, a fact or matter in issue is said to be "that upon which the plaintiff proceeds by his action and which the defendant controverts in his pleadings." In the first *Gunderson* suit, the parties stipulated between themselves that only warehousing, not manufacturing, was involved, so that matter was not "controverted" or "litigated." The court was compelled to accept it as a fact, without argument and without opportunity to question or examine. The factual situation in the present case is very different. Both parties recognized that the plaintiff's entitlement to the exemption depended upon whether its activities were properly denominated warehousing or manufacturing.

Because of the factual similarity, *Freightliner Corp. v. Dept. of Rev., supra,* controls. The plaintiff is not in the business of warehousing goods. It did not assemble goods as an ordinary warehousing service for bailors or for itself. The doctrine of collateral estoppel does not apply here. The orders of the defendant are affirmed.